*This opinion is subject to revision before
publication in the Pacific Reporter*

**2015 UT 85**

IN THE

SUPREME COURT OF THE STATE OF UTAH

DONALD RAWLINGS and JEANETTE RAWLINGS,
*Appellants*,

*v.*

ARNOLD DWAYNE RAWLINGS and PAULETTE RAWLINGS,
*Appellees.*

ARNOLD DWAYNE RAWLINGS and PAULETTE RAWLINGS,
as Trustees of the Arnold Dwayne Rawlings Family Trust,
THERON LaRELL RAWLINGS, BRYCE C. RAWLINGS
and CAROL LYNN R. MASTERSON,
*Third-Party Appellees.*

No. 20130744
Filed September 22, 2015

Fourth District, Provo Dep't
The Honorable Fred D. Howard
No. 970400260

Attorneys:

M. David Eckersley, Salt Lake City, for appellants

Thomas W. Seiler, Jamis M. Gardner, Lacee M. Whimpey,
Provo, for appellees

M. Dayle Jeffs, Randall L. Jeffs, Provo,
for third-party appellees

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE DURHAM joined.

JUSTICE PARRISH sat for oral argument. Due to her resignation from
this court, however, she did not participate herein.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶ 1    "In the beginning God created the heaven and the earth," *Genesis* 1:1, and families have been fighting over them ever since. Today we address a conflict between five siblings over land. The eldest, Donald Rawlings, claims full ownership of farmland deeded him by his father, while his three brothers and his sister (the siblings) argue their father never intended to vest sole ownership in Donald and to their permanent exclusion. The siblings seek to maintain a constructive trust over the property and its equal division among the children.

¶ 2    We first addressed this dispute in *Rawlings v. Rawlings*, 2010 UT 52, 240 P.3d 754 (*Rawlings I*). There, we reversed the court of appeals and upheld a district court order imposing a constructive trust over the farm property in favor of the siblings based on a theory of unjust enrichment. *Id.* ¶ 25. On remand, the district court permitted discovery to resolve the question of the exact contents of the constructive trust. Because Donald's responses to the siblings' discovery requests were inadequate, the district court entered an order to compel. When Donald failed to comply with that order, the district court struck Donald's pleadings and defenses and entered default judgment against him. We hold that the entry of default judgment was not an abuse of discretion, and we affirm the form and content of the constructive trust imposed by the district court.

## BACKGROUND

¶ 3    Our decision in *Rawlings I*, 2010 UT 52, ¶¶ 3–19, 240 P.3d 754, details the events leading up to this action, and thus we provide only a brief summary of them here. This case, now in its third decade, involves a family dispute over land in Utah and Washington counties. The dispute is between children whose father, Arnold Rawlings, owned approximately twenty-two acres of land near Orem, Utah.[1] *Id.* ¶ 4. In 1957, Arnold transferred

---

[1] Apart from Donald, the children are Arnold Dwayne Rawlings (Dwayne), Theron LaRell Rawlings, Bryce Rawlings, and Carol Lynn Masterson. Donald's wife, Jeanette Rawlings, and Dwayne's wife, Paulette Rawlings, are also embroiled in this matter, both as parties and as co-owners of some of the referenced properties. However, because their presence in this action "does
(cont.)

twelve acres of the land to a third party. *Id.* Over the course of the next decade, he also conveyed some small portions to Donald and to Dwayne. *Id.*

¶ 4    In 1966, Arnold was diagnosed with cancer and began undergoing treatment. *Id.* ¶ 5. Approximately six months after his diagnosis, on March 24, 1967, Arnold transferred a "small parcel" of the land, "approximately half an acre" in size, to Dwayne. *Id.* ¶ 4. Arnold conveyed title to the remainder of the farm to Donald. *Id.* Donald argued that the farm transfer was to compensate him for debts he paid on Arnold's behalf. *Id.* At that time, the siblings also signed quitclaim deeds assigning their interests in the farm to Donald. *Id.* ¶ 7. The siblings maintained that Arnold transferred the farm to Donald because Arnold could not qualify for welfare assistance to help pay for his cancer treatment if the farm was in his name. *Id.* ¶ 6. Thus, they argued that Donald held the land as a trustee for the family. *Id.* ¶ 4. Indeed, the district court found that Arnold did not believe that his conveyance of the farm to Donald to be an alienation of his ownership rights. *Id.* ¶ 6.

¶ 5    In line with Arnold's and the siblings' views, Arnold, his wife (Cleo Rawlings), Donald, and the siblings all remained involved in the farm from around the time of the 1967 land transfers and for years following. *Id.* ¶¶ 7–10. At Donald's behest, Dwayne provided $1,000 for the farm's taxes. *Id.* ¶ 7. Arnold managed the property and harvested crops. *Id.* ¶ 8. Bryce lived on the farm. *Id.* ¶ 9. And because Donald represented "that income from the farm property was being used to support their mother[,] . . . all of the siblings, except Donald, . . . helped to maintain the farm property." *Id.* ¶ 10.

¶ 6    The farm was the subject of a boundary lawsuit in 1974, which arose over whether neighboring fences encroached upon the southern boundary of the farm. *Id.* ¶ 11. During the boundary dispute, Donald convinced the siblings to again transfer their interests in the farm to him via a quitclaim deed. In the process, he told them that the legal description on the "deed encompassed only the land being disputed." *Id.* However, the deed "actually described the entire farm property." *Id.* The boundary lawsuit

---

not alter our analysis," we refer only to the siblings. *Rawlings I*, 2010 UT 52, ¶ 4 n.3, 240 P.3d 754.

settled, and Donald received approximately $52,000. *Id.* Donald distributed approximately $6,600 of the settlement money to the siblings and to Cleo for her expenses. *Id.* The district court stated that Donald thereby, at least tacitly, "acknowledg[ed] that the farm was in fact a family farm in which the parties each had a right."

¶ 7    The siblings were not aware that Donald considered the farm to be solely his until 1993, when Donald conveyed a portion of the farm to a third party. When Dwayne became aware of the conveyance, Donald informed him that he, Donald, owned the farm and could use the property in any way he chose.

¶ 8    Donald brought suit in 1997 to quiet title and establish himself as rightful owner of the farm. *Id.* ¶ 12. The siblings counterclaimed and requested that the district court declare them equal beneficiaries of a trust Arnold intended. *Id.* The siblings also filed several *lis pendens* on the farm property and additional property they asserted was acquired with trust proceeds. The district court found that it was "undisputed that Donald co-mingled the funds from the trust property with his other funds and is unable to distinguish any funds" that he spent from the time Arnold deeded him the property in 1967 to the date of trial.

¶ 9    The district court bifurcated the action and found in favor of the siblings on the preliminary issue of whether to impose a constructive trust. *Id.* ¶ 15. The court credited the testimony of the siblings and concluded that Arnold's 1967 conveyance to Donald "was to accommodate Arnold's attempts at becoming eligible for welfare, not in exchange for payment of Arnold's debt and not to transfer ownership." *Id.* The court therefore determined that there was an "equitable need to impose a constructive trust on the property" conveyed by Arnold. *Id.* (internal quotation marks omitted). In *Rawlings I*, we upheld the district court's order imposing a constructive trust under a theory of unjust enrichment, and we remanded for further proceedings. *Id.* ¶ 25.

¶ 10 On remand, Donald contended that the constructive trust should take the form of an equitable lien and not a possessory interest in the farm or any other property. The district court disagreed and imposed a constructive trust proportionately dividing the subject property among the five children. The court also found that Donald was a "conscious wrongdoer" under *Parks*

4

*v. Zions First National Bank*, 673 P.2d 590, 602–03 (Utah 1983). It therefore ordered that any profits or benefits derived from trust property be included in the trust res. The court also denied Donald's motion for release of the *lis pendens* on land known as the "13.5 Acre Property," concluding that the siblings had established a probable validity of success on their claim to that parcel. Thereafter, the district court permitted additional discovery on the issue of what properties should be included within the trust. When Donald failed to respond, the siblings moved to compel. The district court found that Donald's responses to the siblings' discovery requests were "inadequate and nonresponsive." The court ordered Donald "to respond anew" to the siblings' request for documents and awarded the siblings $7,924 in costs and fees.

¶ 11 Dissatisfied with Donald's response to the order, the siblings brought a motion for an order to show cause as to why Donald had not complied. The siblings asked that Donald be held in contempt and that his pleadings be stricken and that default judgment be entered against him. After a hearing, the district court ruled that Donald's "persistent dilatory tactics" in refusing to produce documents in accordance with the court's express order "inappropriately delayed th[e] case's progress" and "frustrated the judicial process." Additionally, the court was "convinced that [Donald] will only continue to ignore the [c]ourt's orders in the future." On that basis, the court granted the siblings' request to strike Donald's pleadings and defenses and entered default judgment against him. The court then determined that the trust included property described as the "Farm Property," the "Industrial Property," the "6 Acres Property," and the "13.5 Acres Property," and it ordered their sale.

¶ 12 Donald now challenges the default judgment, arguing that it was improper for the district court to allow the additional discovery and, through the constructive trust, to award the siblings a possessory interest in the farm and additional properties he purchased. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶ 13 "The choice of an appropriate discovery sanction is primarily the responsibility of the trial judge and will not be reversed absent an abuse of discretion." *First Fed. Sav. & Loan*

*Ass'n v. Schamanek*, 684 P.2d 1257, 1266 (Utah 1984). "With regard to the imposition of a constructive trust, the availability of such a remedy is . . . a question of law reviewed for correctness." *Rawlings I*, 2010 UT 52, ¶ 21, 240 P.3d 754. But where "such a remedy is available, the trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy, and [it] will not be overturned unless it [has] abused its discretion." *Id.* (alterations in original) (internal quotation marks omitted).

## ANALYSIS

¶ 14 Donald argues that the district court erred in entering default judgment against him. Given Donald's actions during discovery, we disagree and affirm the district court's order of default. Donald also contends that it was error to grant the siblings equitable title to the property, arguing that the only available remedy was an equitable lien, as a form of constructive trust. But having already determined in *Rawlings I* that the siblings were legally entitled to a constructive trust, we hold that the mandate rule bars Donald from arguing to the contrary, which is effectively what he is trying to do.[2] We therefore affirm the district court's constructive trust remedy. We also conclude that the district court properly included additional properties acquired with proceeds from conveyances of the constructive trust res, and we affirm the equal division of the trust assets among the children.[3]

---

[2] In *Rawlings I*, this court affirmed the district court's imposition of a constructive trust based on a finding of unjust enrichment. 2010 UT 52, ¶ 51. Because Donald never raised the issue of an equitable lien in his briefs before either the court of appeals or this court during the *Rawlings I* proceedings, we were not given an appropriate opportunity to explain that constructive trusts and equitable liens are separate remedies; one is not a subset of the other. Though it is clear that *Rawlings I* imposed a constructive trust—not an equitable lien—we take the opportunity here to discuss the distinction between the two remedies. *See infra* ¶¶ 27–29.

[3] Donald also attempts to relitigate his statute of limitations defense, arguing that the claim "has never been adequately addressed on appeal." This contention is in error. In *Rawlings I*,

(cont.)

## I. THE ENTRY OF DEFAULT JUDGMENT
## WAS PROPER

¶ 15 We grant district courts broad discretion in matters of discovery because they "deal first hand with the parties and the discovery process." *Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 6 (Utah 1995) (internal quotation marks omitted). For that reason, "we have long held," and we expressly reaffirm today, "that we will not interfere unless abuse of that discretion [is] *clearly* shown." *Morton v. Cont'l Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (alteration in original) (internal quotation marks omitted). Accordingly, "[w]e will find that a [district] court has abused its discretion in choosing which sanction to impose only if there is either an erroneous conclusion of law or . . . no evidentiary basis for the [district] court's ruling." *Id.* (second alteration in original) (internal quotation marks omitted).

¶ 16 A court "may impose appropriate sanctions for the failure to follow its orders, including . . . dismiss[ing] all or part of the action, strik[ing] all or part of the pleadings, or render[ing] judgment by default on all or part of the action." UTAH R. CIV. P. 37(e)(2)(D) (2011).[4] Sanctions are appropriate when "(1) the party's behavior was willful; (2) the party has acted in bad faith; (3) the court can attribute some fault to the party; or (4) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 25, 199 P.3d 957 (internal quotation marks omitted).

¶ 17 In the present case, we first conclude that it was proper for the district court to permit additional discovery on remand following *Rawlings I.* Second, even though default judgment is

we explicitly stated that we "reviewed the arguments made by both parties and the authorities cited in support of [the statute of limitations] arguments," and we found there was "no error in the trial court's resolution of this issue." 2010 UT 52, ¶ 12 n.5. Thus, even if this argument were not foreclosed by the default judgment, it has already been decided and cannot be challenged again here.

[4] Rule 37 was amended after the district court's default judgment order was entered. We cite to the 2011 rule that was in effect at the time of the order.

"one of the most severe of the potential sanctions that can be imposed," *Morton*, 938 P.2d at 274 (internal quotation marks omitted), there was an ample evidentiary basis for the district court's default order because Donald "engaged in persistent dilatory tactics that have frustrated the judicial process" and his actions were "intentional and willful."

### A. The District Court Properly Ordered Discovery Regarding the Trust Contents

¶ 18   Donald's challenge to the default judgment centers on the argument that it was error for the district court to permit discovery on remand following *Rawlings I.* He argues that once a constructive trust was imposed, "there was no need for any additional discovery" because "the parties have already had their day in court on the merits."

¶ 19   We determine that additional discovery was appropriate and, indeed, necessary. The trial in this case was bifurcated, a fact that Donald disregards: the district court chose to first address whether it was proper to impose a constructive trust before deciding the issue of what property such a trust would contain. Therefore, after the district court imposed a constructive trust, the issue of what would make up the corpus of the trust remained. Discovery was thus necessary to allow the court to make a determination on that issue. Furthermore, Donald stipulated to a post—*Rawlings I* scheduling order that provided that "[d]iscovery shall be allowed in this case on all remaining material issues in this bifurcated action."[5] He cannot now claim that he should be released from that agreement. Therefore, after this court upheld the imposition of a constructive trust, it was proper for the district court to permit further discovery to determine what properties the trust comprised and to identify any benefits or profits derived from Donald's use or transfer of those properties.

### B. Given Donald's Conduct During Discovery, Entry of Default Judgment Was Not an Abuse of Discretion

¶ 20   Donald also contends that it was an abuse of discretion for the district court to enter default judgment against him. But the district court made extensive findings that Donald was not

---

[5] Though Donald's counsel did not sign the order, he orally agreed to it at a July 10, 2012 hearing.

responsive to requests, ignored earlier discovery sanctions, and disregarded an explicit court order. Given these facts, we hold that it was not an abuse of discretion for the district court to strike Donald's pleadings and defenses and enter default judgment against him.

¶ 21 During the post—*Rawlings I* discovery, Donald failed to produce additional documents requested by the siblings, but instead contended that he had previously supplied all requested documentation. The siblings moved to compel, and the district court found that, "in fact . . . such documents had not been supplied" and that Donald's responses to the document requests "were inadequate and nonresponsive." As a result, the court ordered Donald "to respond anew" to the siblings' request for documents by either providing the requested documents or personally certifying that after a diligent search no responsive documents existed. The court also sanctioned Donald, awarding the siblings their costs, expenses, and attorney fees associated with the motion to compel.

¶ 22 Despite the district court's clear directives and the imposition of sanctions, Donald still did not comply with the court's order. The siblings brought a motion for an order to show cause, arguing that Donald did not comply with court orders and that the court should hold Donald in contempt, strike his pleadings, and enter default judgment. In response, Donald claimed that he had "now complied with all document requests." Ruling on the matter, the district court stated that Donald "inappropriately delayed this case's progress" and that "[m]ost troubling is [his] refusal to act in accordance with the express and stringent terms" of the court's order. Moreover, the court continued, "[i]n light of the fact that [Donald] previously [had] been found in contempt, had attorney fees awarded against [him], and now [has] ignored the new Order imposed against" him, the court was "convinced that [he] will only continue to ignore the Court's orders in the future." Under Utah Rule of Civil Procedure 37(e)(2)(D) (2011), the court found that Donald's failure to comply "was not substantially justified" and there was "no adequate excuse or explanation." As a result, the court granted the siblings' request to strike Donald's pleadings and defenses and entered default judgment against him.

¶ 23   Donald defends his actions by again arguing that he had previously produced all requested documents. He contends that, even though the district court ordered him to "respond anew," this court should consider the documents that he did produce. In other words, Donald acknowledges that he did not comply with the district court's explicit order but nonetheless argues that sanctions against him were an abuse of discretion.

¶ 24   The rules do not permit parties to comply with court orders only when they see fit, and we will not countenance Donald's open disregard for the district court's directives. Under rule 37, if a party fails to comply with a court order, the court may "dismiss all or part of the action, strike all or part of the pleadings, or render judgment by default on all or part of the action." UTAH R. CIV. P. 37(e)(2)(D) (2011). The district court made extensive findings that Donald did not comply with its orders, provided no adequate justification or excuse, ignored previous sanctions, and acted in a willful and intentional manner. These findings support the district court's decision to strike Donald's pleadings and defenses and enter default judgment in favor of the siblings. We therefore find no abuse of discretion and affirm the district court's order of default judgment.

## II. UNDER THE MANDATE RULE, DONALD MAY NOT CHALLENGE THE IMPOSITION OF THE CONSTRUCTIVE TRUST

¶ 25   Donald also challenges the default judgment by attacking the form of the remedy. He contends that any unjust enrichment he received was through the siblings' improvements to the land and not in acquisition of the land in the first place. He argues that the siblings may therefore receive only an equitable lien against the property in the amount of their improvements, not a possessory interest in it. But the siblings counter that because *Rawlings I* affirmed the district court's imposition of the constructive trust, Donald may not challenge that ruling now because it is the law of the case. We agree and therefore decline to address the merits of Donald's argument.

¶ 26   Under our "law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (internal quotation marks omitted). The doctrine "further[s] the goals of judicial economy and finality

. . . within a single case." *Id.* A district court retains discretion to revisit a decision—either sua sponte or by request of the parties—provided that the case has not been appealed and remanded. *Id.* ¶ 27. However, the "mandate rule"—a branch of the law of the case doctrine—"dictates that a prior decision of a district court becomes mandatory after an appeal and remand[,]bind[ing] both the district court and the parties to honor the mandate of the appellate court." *Id.* ¶ 28. Moreover, the mandate "is also binding on the appellate court should the case return on appeal after remand."[6] *Id.*

¶ 27 In *Rawlings I*, we expressly "affirm[ed] the [district] court's finding of unjust enrichment and its imposition of a constructive trust on that basis." 2010 UT 52, ¶ 25, 240 P.3d 754. Donald now argues that *Rawlings I* "was silent as to the form" of the constructive trust and thus does not preclude a subsequent determination that an equitable lien—not a possessory interest—was the only remedy available in these circumstances. But, as we explain below, Donald's contention is in error. Constructive trusts and equitable liens are distinct and separate remedies, and *Rawlings I* did not leave open the possibility that we meant "equitable lien" when we said "constructive trust."

¶ 28 In *Rawlings I*, we adopted and employed the understanding of constructive trusts from the Restatement (First) of Restitution. 2010 UT 52, ¶ 29. The Restatement draws a distinction between a "Constructive Trust," addressed in section 160, and an "Equitable Lien," addressed in section 161. RESTATEMENT (FIRST) OF RESTITUTION §§ 160, 161 (AM. LAW INST. 1937). "[A constructive trust arises] . . . [w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.* § 160. In contrast, an equitable lien

---

[6] We have recognized three exceptions to the law of the case doctrine, but Donald has not argued that any of these apply: "(1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.,* 2008 UT 73, ¶ 34, 196 P.3d 588 (internal quotation marks omitted).

exists as a "security for a claim" and typically arises when an individual makes improvements on the land of another.[7] *Id.* § 161, cmt. a. Thus, while both may serve to remedy unjust enrichment, "[t]he difference is that restitution is measured differently"— "[w]here the constructive trust gives a complete title to the plaintiff, the equitable lien only gives him a security interest in the property." DAN B. DOBBS, LAW OF REMEDIES § 4.3(3) (2d ed. 1993).

¶ 29  In short, a constructive trust and an equitable lien are separate equitable remedies, and in *Rawlings I* we expressly imposed the former. 2010 UT 52, ¶ 25. We do recognize that these two remedies may engender confusion because some courts and commentators have used the terms inconsistently. *See* AMY MORRIS HESS ET AL., THE LAW OF TRUSTS AND TRUSTEES § 32 (3d ed. 2007) ("[T]he term equitable lien is often erroneously used when referring to express or constructive trusts."). However, it is clear from the analysis in *Rawlings I* that this court did not use the terms interchangeably but rather understood a constructive trust to mean a possessory interest in the property. In our analysis, we adopted and relied on section 160 of the Restatement (First) of Restitution. 2010 UT 52, ¶ 29 (recognizing we adopted section 160 in *Parks v. Zions First National Bank*, 673 P.2d 590, 599 (Utah 1983)). As noted above, that section is entitled "Constructive Trust" and addresses situations when an individual who has title to property is subject to a "duty to convey it to another." RESTATEMENT (FIRST)

---

[7] Donald's argument hinges on this point—he contends that the siblings' contributions to the farm were mere improvements that warrant, at most, a security interest but not a possessory interest in the land. We agree with the general proposition that an equitable lien is typically, though not invariably, the appropriate remedy for an improvement. *See* RESTATEMENT (FIRST) OF RESTITUTION § 161 cmt. a (AM. LAW INST. 1937). But this issue, too, has been decided. In *Rawlings I*, we laid out the three-part test for unjust enrichment and determined that the trial court's findings supported imposition of a constructive trust to remedy Donald's unjust enrichment. 2010 UT 52, ¶¶ 41–50. Moreover, though the parties did not address or brief the legal significance of the quitclaim deeds Donald twice secured from his siblings, we think the deeds contradict Donald's claim that the siblings never contributed to his acquisition of the property. *See infra* ¶ 34.

OF RESTITUTION § 160 (AM. LAW INST. 1937). This "duty to convey" unambiguously speaks to the possessory nature of the constructive trust rather than a mere security interest. Moreover, the Restatement does squarely address security interests in the form of equitable liens, but it does so in a separate section. *Id.* § 161. Absent from our decision in *Rawlings I* is any mention of equitable liens or of section 161 of the Restatement. Indeed, it appears that none of the parties and neither the trial court, the court of appeals, nor this court ever discussed the issue of an equitable lien during the *Rawlings I* proceedings. But that failing lies squarely with Donald, for he did not raise the issue until remand following *Rawlings I*. In sum, in *Rawlings I* we determined that Donald would be unjustly enriched were he to retain the farm, and so we imposed a constructive trust over the property, recognizing that the siblings had an equitable interest in it. 2010 UT 52, ¶ 50. This ruling became the law of the case, and any attempt by Donald to sidestep that ruling must fail.

¶ 30 Donald also contends that the district court erred in determining that he was a "conscious wrongdoer" and thus ordering that any profits or benefits derived from trust property be included in the trust res. But Donald employs the same equitable lien argument that we deem foreclosed under the mandate rule, and, as we explain below, his challenge therefore fails. Put differently, Donald ignores that the court in *Rawlings I* already concluded that the siblings possessed an equitable interest in the property giving rise to a constructive trust.

¶ 31 Following *Rawlings I*, the district court ordered that the constructive trust should include "a disgorgement of any profits or benefits derived" from the trust property because it found Donald to be a "conscious wrongdoer" under *Parks*, 673 P.2d at 602–03. In *Parks*, we explained that "[a] 'conscious wrongdoer' is one who 'wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property.'" *Id.* at 603 (quoting RESTATEMENT (FIRST) OF RESTITUTION § 202 (AM. LAW INST. 1937)). And because of a wrongful disposition, a claimant may obtain an interest in both the newly acquired property and any profits that may arise from its use or appreciation. *Id.* at 602–03; *see also* RESTATEMENT (FIRST) OF RESTITUTION §§ 160 cmt. h, 202 cmt. c (AM. LAW INST. 1937). In *Parks*, a husband and wife acquired various properties during their marriage, purchased primarily with income generated by

Mr. Parks. 673 P.2d at 592. At the time of Mrs. Parks's death, title to the properties was in her name alone, and her will provided that nearly all the properties should be sold, leaving Mr. Parks only a meager sum. *Id.* at 592–94. Mr. Parks challenged the will, and we determined that he held an "equitable interest" in the properties and that Mrs. Parks's estate would be unjustly enriched if it were allowed to retain sole ownership of property acquired primarily through her husband's earnings. *Id.* at 600. Moreover, we concluded that the estate acted as a "conscious wrongdoer" when it disposed of portions of the trust property because it knew that Mr. Parks had an equitable claim over them. *Id.* at 602–03. We therefore held that Mr. Parks was entitled to a share of any property acquired with the trust proceeds as well as any related profits or appreciation. *Id.* at 603.

¶ 32 Donald contends that the conscious-wrongdoer doctrine of *Parks* is not applicable here because the siblings' contributions did not relate to the acquisition of the farm property and therefore they were entitled to only an equitable lien, not an ownership interest. But the equitable lien argument is the same issue that we decided in *Rawlings I* and that is now foreclosed under the mandate rule.

¶ 33 And in any event, Donald's argument misapprehends our decision in *Parks*. Donald reads *Parks* to allow for the imposition of a constructive trust (and application of the conscious-wrongdoer doctrine) only when the plaintiff contributed to the acquisition of the property. But *Parks* was not so circumscribed. Certainly, under the facts of that case, Mrs. Parks's acquisition of the properties through her husband's income was the act that gave rise to the constructive trust. *Parks*, 673 P.2d at 600. But we never suggested that contribution to acquisition was the only means by which a plaintiff was entitled to a constructive trust. Instead, we adopted section 160 of the Restatement, which we recognized "presents the broadest possible application of a constructive trust." *Id.* at 599. It imposes a "duty to convey" property if the individual "would be unjustly enriched" were he to retain it. *Id.* (quoting RESTATEMENT (FIRST) OF RESTITUTION § 160 (AM. LAW INST. 1937)). There are a myriad of circumstances—of which acquisition is one—that could give rise to this equitable duty to convey. *See id.* ("Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the

most efficient manner . . . ." (internal quotation marks omitted) (quoting JOHN NORTON POMEROY, EQUITY JURISPRUDENCE § 1044 (5th ed. 1941))).

¶ 34 Moreover, Donald's entire argument is grounded in his contention that the siblings did not contribute to the acquisition of the farm property. But the record belies this factual assertion. The siblings twice ceded their legal interests in the farm to Donald, presumably so he could act as trustee over the property. They did so via quitclaim deeds—including a deed that Donald secured through misrepresentation, claiming that it comprised only land involved in a boundary dispute when it really included the entire farm property. As Judge Cardozo explained, "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[,] equity converts him into a trustee." *Beatty v. Guggenheim Expl. Co.*, 122 N.E. 378, 380 (N.Y. 191x9). And in *Parks,* we stated that the role of constructive trustee requires that the trustee "respect and account for the equitable interest" held by the beneficiaries. 673 P.2d at 602. A "disposition of the trust property, with knowledge of [a beneficiary's] interest therein, constitute[s] a breach of [the] responsibility" of a trustee, resulting in "the status of a 'conscious wrongdoer.'" *Id.* Here, Donald procured quitclaim deeds from his siblings (some through deceptive tactics), disposed of farm property,[8] comingled funds such that they could not be traced, and obtained the benefits of the family's efforts by misleading them into believing that he was managing the

---

[8] Donald argues that he did not use trust property or income to acquire additional property. But the district court, in denying Donald's request to release the *lis pendens* on a property in Washington County, reiterated its previous determinations that Donald had comingled funds and received benefits from the siblings, necessitating the imposition of a constructive trust. The court then stated that the discovery it had ordered was "to determine the profits and/or benefits derived by [Donald's] possession, exploitation, use, and control of the constructive trust properties." But because of Donald's contumacious behavior during discovery, evidence of his conveyances and acquisitions was not ascertainable. The court therefore properly ordered that all property subject to *lis pendens* be included in the trust.

property for the family's benefit. And all the while, Donald was aware that the siblings understood the farm to be a family farm and believed—which we affirm here—that they had an equitable interest in it. And in the end, Donald defied court orders designed to unravel the foregoing by refusing to participate in discovery.

¶ 35  "A constructive trust is the formula through which the conscience of equity finds expression. . . ." *Beatty*, 122 N.E. at386. Given the foregoing facts and in light of the court's broad powers to fashion an equitable remedy, we see no abuse of discretion on the part of the district court in finding Donald a conscious wrongdoer and imposing a constructive trust on the properties subject to *lis pendens*. We therefore affirm the district court's ruling.

## CONCLUSION

¶ 36 Based on Donald's intentional refusal to provide requested discovery or comply with an unequivocal court order, the district court did not abuse its discretion in entering default judgment against him. And in *Rawlings I*, we affirmed the imposition of a constructive trust to remedy the finding of unjust enrichment. That is the law of the case,  and Donald may not now attempt to transform the constructive trust into an equitable lien and is likewise foreclosed from arguing that the conscious-wrongdoer doctrine is inapplicable. We therefore affirm the district court's default judgment and order of sale.