**2022 UT App 104**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SHON BRIAN BLAKE,
Appellant.

Opinion
No. 20200675-CA
Filed August 18, 2022

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 191400656

Douglas J. Thompson, Attorney for Appellant

Sean D. Reyes, Kris C. Leonard, and William M.
Hains, Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

POHLMAN, Judge:

¶1     Shon Brian Blake appeals the district court's Order of
Restitution. Blake argues that the court abused its discretion in
ordering restitution for medical bills because there was
insufficient evidence to support a determination that his criminal
conduct proximately caused the medical services generically
identified in those bills. We agree and reverse.

## BACKGROUND

¶2     On February 12, 2019, Blake was involved in a
confrontation with his ex-girlfriend and her new boyfriend.

During the confrontation, Blake shot at the ex-girlfriend's car and then at the boyfriend. The shots hit the boyfriend twice in the arm, and he was taken to the hospital, where he had surgery to remove one of the bullets and repair the damage to his arm.

¶3     Blake was charged with attempted murder, felony criminal mischief (domestic violence), five counts of felony discharge of a firearm, and misdemeanor criminal mischief. As a result of plea negotiations, the charges were reduced to aggravated assault, felony criminal mischief (domestic violence), and one count of felony discharge of a firearm. Blake pleaded guilty to the reduced charges, acknowledging that he had shot the boyfriend in the arm. The district court sentenced Blake to concurrent prison terms, ordered $500 in restitution for damage to the car, and held restitution open for one year to allow additional claims to be submitted.

¶4     Within that year, the State filed a motion to amend the restitution amount to include restitution to cover $36,701.56 that the Utah Office for Victims of Crime (UOVC) had allegedly paid for the boyfriend's medical bills. The State supported the motion with an attached list of payments, setting forth seven separate payments allegedly made to cover twenty-two medical claims with service dates from February 12 to 14, 2019. The list did not identify what services were provided or by whom; instead, the amounts were simply labeled "Medical" or "Medical Facility."

¶5     Blake objected to the motion, contesting the restitution amount and requesting a hearing on the matter. At the hearing, Blake argued that because the payment amounts were described only as "Medical" or "Medical Facility," he was "unable to determine what the specific claim was, where it came from, or how it was related to the case." Therefore, Blake argued, the payment list was insufficient to support the requested order of restitution.

¶6      The State was joined by two representatives from UOVC to explain the standard processes the office usually employed before authorizing any payment.[1] Neither representative had personal knowledge regarding the payments in question, but they explained that before UOVC would authorize a payment, a claims analyst would review the invoices and check the dates as well as the procedural and diagnostic codes to verify that the treatment received was "crime-related." One of the representatives also stated that the payment list did not include the names of the treating physicians or facilities or the related codes that would describe the relevant medical procedures because the document had been redacted due to its status as a protected record under the Government Records Access and Management Act, *see* Utah Code Ann. §§ 63G-2-101 to -901 (LexisNexis 2019 & Supp. 2021). The representative conceded, however, that there were ways to allow disclosure of this information in the event it was needed. Nonetheless, the State continued to assert that the payment list was "proof enough" that the payment amounts were related to services proximately caused by Blake's criminal conduct.

---

1. The State argues that Blake does not account for the information provided by the UOVC representatives because the State "proffered" the information by having the representatives address the court without placing them under oath. Because Blake did not object to the district court's reliance on the proffered testimony, any objection to that reliance would not be preserved for appeal. *See State v. Amoroso*, 1999 UT App 60, ¶ 7, 975 P.2d 505 ("As a general rule, appellate courts will not consider an issue raised for the first time on appeal."). But Blake's argument on appeal does not specifically challenge the court's reliance on the proffered testimony. Instead, we understand Blake's argument to be that even considering the proffered testimony, there was insufficient evidence to support the district court's restitution order.

¶7    The district court agreed with the State, relying on the facts that the crime victim was identified on the statement as the recipient of the medical care, that "the dates of service correspond to roughly the time of the alleged injuries in the crime," and that "statutory procedures for making payment to claimants [have] been followed in this case." On this basis, the court determined that "the medical bills arise from the crime in this case." The court then set complete restitution at $36,701.56 and imposed court-ordered restitution of $18,350.78.[2] Blake now appeals.

ISSUE AND STANDARD OF REVIEW

¶8    Blake contends that the district court abused its discretion by ordering restitution where the State did not present sufficient evidence to link his admitted criminal conduct to the requested restitution amounts. "We will not disturb a district court's restitution determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Ogden*, 2018 UT 8, ¶ 25, 416 P.3d 1132 (cleaned up).

ANALYSIS

¶9    Under the Crime Victims Restitution Act, the district court is required to determine restitution for any pecuniary damages proximately caused by the defendant's criminal conduct. *See* Utah

---

2. For a discussion of the differences between complete restitution and court-ordered restitution, see *State v. Ogden*, 2018 UT 8, ¶¶ 27–28, 416 P.3d 1132. This distinction, however, no longer exists in current law. *See* Utah Code Ann. § 77-38b-205(1)(a)(ii) (LexisNexis Supp. 2021) ("In determining the amount of pecuniary damages . . . , the court shall consider all relevant facts to establish an amount that fully compensates a victim for all pecuniary damages proximately caused by the criminal conduct of the defendant.").

Code Ann. § 77-38a-302(1) (LexisNexis 2017) ("When a defendant enters into a plea disposition or is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution . . . .") (current version at *id.* § 77-38b-205 (Supp. 2021)); *State v. Ogden*, 2018 UT 8, ¶ 38, 416 P.3d 1132 (determining the appropriate causal standard to be proximate cause—"the same causation standard . . . that would apply in a parallel civil action").[3] The proximate cause standard "requires a showing that the crime, in a natural and continuous sequence, unbroken by any new cause, produced the injury and that the injury would not have occurred absent the crime." *State v. Watson*, 2021 UT App 37, ¶ 17, 485 P.3d 946 (cleaned up). And "even in cases where UOVC compensates a victim, the State still bears the burden of proving that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities." *Id.* (cleaned up).

¶10    We agree with Blake that our decision in *State v. Watson*, 2021 UT App 37, 485 P.3d 946, is controlling here. In *Watson*, the defendant, in a fit of road rage, tried to run the victim off the road, hit the victim's car from behind, and then, after exiting his vehicle, chased and assaulted the victim. *Id.* ¶¶ 2–5. The district court ultimately ordered restitution that covered amounts UOVC had paid for the victim's mental health therapy sessions. *Id.* ¶ 7. Although the State had supported its restitution request with a list of twenty-five therapy sessions that had commenced about six weeks after the road rage incident, the list stated only that the charges were for "Mental Health Therapy" and did not list any provider information or any further description of the topics addressed during any of the sessions. *Id.* ¶ 8. The State did, however, present testimony from a UOVC restitution specialist, who explained that under "UOVC's standard procedure" an

---

3. The proximate cause standard has been specifically incorporated by the recent modifications to the Crime Victims Restitution Act. *See id.* § 77-38b-205(1)(a)(i)(B).

analyst would have reviewed each claim and authorized payment only if the claim was "related to the specific crime." *Id.* ¶ 9.

¶11     The *Watson* court determined that while it did not doubt that Watson's violent behavior could have led to the victim needing mental health services, the State still had not sufficiently proved its case for restitution. *Id.* ¶ 16. As the court explained, "a trial court must determine whether restitution is available from the record before it rather than from assumptions about the analysis an administrative agency may have employed in reaching its conclusions under a distinct statute that has different goals and limitations. In other words, the court may not delegate the determination of proximate cause to UOVC." *Id.* ¶ 18 (cleaned up). "Instead, so that the court could make its own determination based on the evidence, it was incumbent on the State to include in the record the materials the claims analyst relied on or other evidence . . . to permit the court's direct review of the evidence establishing causation." *Id.* ¶ 19. Thus, where the State's evidence "did not allow the court to make its own, independent determination on the subject" of causation, the evidence "was an insufficient basis for the court's restitution award." *Id.*

¶12     As in *Watson*, the evidence presented here was insufficient for the district court to make an independent determination of causation without relying on the causal determinations made by UOVC. While there is no real argument that the shooting here did not cause a need for some medical care to address the gunshot wounds, there was insufficient evidence presented from which the court could have independently determined that *these* generic amounts, labeled simply "Medical" and "Medical Facility," represented medical services for injuries proximately caused by Blake. Certainly, there was information before the court about the general procedures UOVC representatives employ to assure that the medical charges are "crime-related," and the court trusted that UOVC had followed those procedures in this case. But a restitution order based almost exclusively on such trust in

UOVC's methods and its assessment of "crime-relatedness" inappropriately "delegate[s] the determination of proximate cause to UOVC." *See id.* ¶ 18 (cleaned up); *see also id.* ¶ 17 (recognizing that "mere 'crime-relatedness' falls short of the proximate cause standard").

¶13    In other words, even if a UOVC representative had determined that there was a sufficient causal link between the crime and the medical bills to satisfy UOVC procedures, the district court may not simply rely on that determination when making a restitution order.[4] And without reliance on UOVC's conclusory determinations, the only evidence supporting the causal connection was that unidentified charges purportedly paid for medical treatment for the crime victim occurred very close in time to the crime. This is not sufficient to establish proximate cause. Therefore, where the evidence presented by the State was not sufficient to "allow the court to make its own, independent determination" as to causation, the evidence was not a sufficient basis for the restitution order.[5] *See id.* ¶ 19.

---

4. In this case, neither representative was personally involved in the review of the bills relating to the victim's medical services and neither one testified (or proffered testimony) that the amounts provided on the payment list were analyzed using standard procedures.

5. The parties agree that neither prior case law nor the Crime Victims Restitution Act specifies the burden of proof applicable to claims for restitution, but both advocate for application of the preponderance of the evidence standard. *See generally State v. Oliver*, 2018 UT App 101, ¶ 22 n.4, 427 P.3d 495 (recognizing the silence of appellate opinions and the act on the appropriate burden of proof, but also recognizing that "in federal courts, and in other state jurisdictions of which we are aware, the government

(continued…)

¶14    The State resists this conclusion, arguing that a more forthcoming statement of medical costs was not necessary because the court may make "a reasonable estimate of the loss," *see State v. Ogden*, 2018 UT 8, ¶ 53, 416 P.3d 1132 (cleaned up). But while "the amount of damages may be based upon approximations," an award of restitution "must rely on a sufficient evidentiary basis." *Id.* ¶ 52 (cleaned up). And we cannot agree that simply knowing that medical services were needed by the victim on dates near the crime date was a sufficient evidentiary basis to conclude that each of the generic payment amounts was for services proximately caused by the shooting. The court's assumptions required reliance on the causal determinations made by UOVC, which, for the reasons discussed above, is not appropriate. We therefore reverse the district court's restitution order.

CONCLUSION

¶15    The evidence provided by the State was insufficient to support the district court's determination that the amounts included on the payment list provided by UOVC for unidentified medical services were proximately caused by Blake's criminal conduct. We therefore reverse the district court's restitution order.

————

bears the burden of proving the restitution amount, including the requisite causal link, by the preponderance of the evidence" (cleaned up)). Accordingly, we apply that standard here and leave resolution of that issue for another day.