**2022 UT App 127**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MAXIMO GABRIEL CALATA,
Appellant.

Opinion
No. 20200145-CA
Filed November 17, 2022

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 171908445

Emily Adams and Freyja Johnson, Attorneys
for Appellant, assisted by law students Jared Erekson
and Jonathan Mena[*]

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee, assisted by law student Jessica Holzer[*]

JUSTICE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN D. TENNEY concurred.[1]

POHLMAN, Justice:

¶1     Two Utah Highway Patrol troopers pulled over Maximo
Gabriel Calata after a license plate check revealed the plate on the

---

[*] *See* Utah R. Jud. Admin. 14-807 (governing law student practice
in the courts of Utah).

1. Justice Jill M. Pohlman began her work on this case as a member
of the Utah Court of Appeals. She became a member of the Utah
Supreme Court thereafter and completed her work on the case
sitting by special assignment as authorized by law. *See generally
id.* R. 3-108(4).

car Calata was driving had been reported as stolen. As the troopers approached Calata, he fled the scene in the car, leading the troopers on a high-speed chase for nearly twenty blocks. Eventually, after Calata's car slowed, both troopers employed a pursuit intervention technique (PIT maneuver), causing Calata's car to come to a stop. Calata was arrested, and he later pled guilty to failure to stop at command of police. As part of his sentence, the district court ordered Calata to pay restitution for damages sustained by the troopers' patrol cars in ending the chase.

¶2　Calata appeals, arguing that the district court erred when it refused to calculate court-ordered restitution and that his defense counsel provided constitutionally ineffective assistance in the restitution proceedings. We reject his claims of ineffective assistance of counsel, but we reverse and remand for the district court to determine court-ordered restitution.

BACKGROUND[2]

¶3　On July 13, 2017, a Utah Highway Patrol trooper (Trooper 1) ran a license plate check on a damaged car he observed at a gas station. Calata was the driver of that car. The check revealed that the license plate had been reported stolen, so Trooper 1 followed the car as it left the gas station. After another Utah Highway Patrol trooper (Trooper 2) arrived as backup, the troopers pulled Calata over. The troopers exited their patrol cars "to conduct a felony stop," but as they approached Calata, he drove away. The troopers pursued Calata as he "weaved in and out of traffic on I-15," reaching speeds between 100 and 105 miles

---

2. Because Calata pled guilty to failure to stop at command of police, there was no trial and so we recite the facts consistent with the district court's factual findings made in support of its restitution order. Like the parties, we also draw background facts from the information, as well as from the restitution hearing transcript.

per hour. The pursuit ended when both troopers performed PIT maneuvers.

¶4    Trooper 1 later explained that a PIT maneuver is a technique used to "rotate the vehicle" an officer is "in pursuit of in an attempt to get [the vehicle] to stop." The Utah Department of Public Safety has policies and procedures that apply to police pursuit and PIT maneuvers. According to one such policy, an officer is "required to request permission" to perform a PIT maneuver when traveling "over 45 miles per hour." Here, when it appeared that Calata was slowing and was going to exit the freeway, the troopers executed PIT maneuvers in an effort to end the pursuit.

¶5    The troopers testified that they were going 40–50 miles per hour when Trooper 1 executed the first PIT maneuver by using his patrol car to contact the rear passenger side of Calata's car, which caused Calata's car to come to a rest after rotating 360 degrees and skidding toward the freeway off-ramp. As Trooper 2 "was pulling up on" Calata's car to box it in from behind, he noticed that its brake lights were off and that it "began rolling towards the . . . [freeway] off ramp." Trooper 2 then performed a second PIT maneuver, also striking the rear passenger side of Calata's car to "prevent it from moving and fleeing again." The PIT maneuvers damaged both troopers' vehicles but successfully stopped Calata.

¶6    Calata was arrested and later pled guilty to failure to stop at command of police, a third-degree felony. As part of the plea agreement, the State recommended no prison time provided that Calata commit no new violations, obtain his presentence investigation report, and appear at his sentencing hearing. But when Calata failed to appear for his mandatory sentencing hearing, he was arrested and sentenced to an indeterminate prison term not to exceed five years.

¶7    After sentencing, the State moved for an order of restitution, arguing that Calata was liable for the cost of repairing

the troopers' patrol cars. Calata requested a restitution hearing, at which the district court asked for briefing on whether Calata's actions proximately caused the damage to the troopers' vehicles. Calata argued that the State's request for restitution should be denied because he was not the proximate cause of the damage. He asserted that the troopers' PIT maneuvers violated Utah Department of Public Safety policies and procedures and, as a result, their actions were a "superseding cause that relieve[d] [him] of liability for the damage to the patrol vehicles."

¶8 The district court disagreed. It first addressed whether the troopers' actions were foreseeable "to a reasonable person in Mr. Calata's circumstances." It found that even if the troopers "might have violated the policies in one way or another," their actions were foreseeable because they were working "to protect the community from the dangers posed by [Calata's] vehicle," which was traveling "105 miles an hour down the freeway." The court further explained that "a reasonable person would foresee that the [troopers] might initiate a collision in order to stop [Calata] from continuing with a high speed flight," regardless of what the Utah Department of Public Safety policies and procedures provide.

¶9 The court also addressed whether the restitution statute required it to determine complete restitution *and* court-ordered restitution. The court explained it did not need to determine court-ordered restitution because the statute "only contemplates the determination of court ordered restitution in the event the defendant is placed on probation." Calata objected, arguing that the restitution statute requires the district court to consider both complete restitution and court-ordered restitution. But the court ruled that it was obligated only "to make a finding of complete restitution" because Calata was in prison, not on probation.

¶10 The court then granted the State's motion for restitution and ordered Calata to pay $3,071.01—an amount to which both parties stipulated.

¶11 Calata now appeals.

ISSUES AND STANDARDS OF REVIEW

¶12 Calata first argues that the district court erred in declining to determine court-ordered restitution. "We will not disturb a district court's restitution determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Ogden*, 2018 UT 8, ¶ 25, 416 P.3d 1132 (cleaned up). "We review a district court's interpretation of restitution statutes for correctness." *State v. Hedgcock*, 2019 UT App 93, ¶ 11, 443 P.3d 1288 (cleaned up).

¶13 Second, Calata raises two claims of ineffective assistance of counsel. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law . . . ." *State v. Tapusoa*, 2020 UT App 92, ¶ 9, 467 P.3d 912 (cleaned up).

ANALYSIS

I. Court-ordered Restitution

¶14 Calata contends that the district court erred when, over his objection, it refused to calculate court-ordered restitution. Calata argues that "this determination is mandatory" under the plain language of the Crime Victims Restitution Act (the Restitution Act)[3] and the caselaw interpreting it.

¶15 "Complete restitution and court-ordered restitution are distinct concepts." *State v. Grant*, 2021 UT App 104, ¶ 56, 499 P.3d

---

3. Calata asserts that the 2017 version of the Restitution Act—in effect at the time of his charged conduct—applies in this case. Although the State asserts that the 2020 version of the Restitution Act controls, it acknowledges that as between the 2017 and 2020

(continued…)

176. Complete restitution is the restitution "necessary to compensate a victim for all losses caused by the defendant." *Id.* (cleaned up). Court-ordered restitution, in contrast, is the restitution the court "orders the defendant to pay as a part of the criminal sentence." *Id.* (cleaned up). It is "a subset of complete restitution" and accounts for, among other things, the defendant's ability to pay.[4] *Id.* (cleaned up).

¶16    Although the district court calculated complete restitution, the court did not calculate court-ordered restitution, concluding that the Restitution Act "only contemplates the determination of court ordered restitution in the event the defendant is placed on probation." Stated another way, the court reasoned that because court-ordered restitution is "essentially . . . a condition of probation," it need not determine court-ordered restitution when, as here, "the defendant is committed to prison."

¶17    The State agrees with Calata that this was error and warrants remand to the district court for a determination of court-ordered restitution. At the time of Calata's restitution hearing, the Restitution Act explained that "[i]n determining restitution, the court shall determine complete restitution and court-ordered

_____

versions, "the text of the relevant provisions is the same." Given the State's acknowledgment that any differences in the Restitution Act are immaterial to the issues raised on appeal, we assume without deciding that the 2017 version of the Restitution Act applies.

4. The distinction between complete restitution and court-ordered restitution "no longer exists in current law." *State v. Blake*, 2022 UT App 104, ¶ 7 n.2, 517 P.3d 414; *see also* Utah Code Ann. § 77-38b-205(1)(a)(i) (LexisNexis Supp. 2022) ("[T]he court shall order a defendant, as part of the sentence imposed under Section 76-3-201, to pay restitution to all victims . . . for the entire amount of pecuniary damages that are proximately caused to each victim by the criminal conduct of the defendant," or, in the case of a plea agreement, "in accordance with the terms of" that agreement.).

restitution." Utah Code Ann. § 77-38a-302(2) (LexisNexis 2017). Our appellate courts have interpreted this language as "a clear directive that district courts are to make two separate restitution determinations, one for complete restitution and a second for court-ordered restitution." *State v. Laycock*, 2009 UT 53, ¶ 20, 214 P.3d 104; *see also State v. Ogden*, 2018 UT 8, ¶ 26, 416 P.3d 1132 (same); *Grant*, 2021 UT App 104, ¶ 57 (collecting cases). Based on this governing law and the State's concession of error, we reverse the court's ruling, and we remand with instructions for the court to determine court-ordered restitution under the factors set forth in the Restitution Act.

## II. Ineffective Assistance of Counsel Claims

¶18 Calata contends that defense counsel rendered constitutionally ineffective assistance in two ways. First, Calata asserts that defense counsel was ineffective in failing to request that the court apportion the fault of Calata and the troopers in assessing Calata's restitution liability, arguing that "the district court should apportion fault in restitution proceedings if requested to do so." Second, Calata asserts that defense counsel was ineffective in failing to argue to the district court "that the Restitution Act impermissibly infringed" on Calata's "constitutional right to have a jury determine the damages giving rise to a civil judgment," as well as on Calata's "due process rights to the procedural safeguards and remedies in a civil action." We disagree with Calata.

¶19 To establish ineffective assistance of counsel, a defendant must meet the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show, first, that counsel's performance was deficient in that it "fell below an objective standard of reasonableness" under prevailing professional norms, *id.* at 687–88, and, second, that "the deficient performance prejudiced the defense," *id.* at 687. It is well established that we need not "address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 (cleaned

up). Here, we resolve and reject both of Calata's ineffective assistance claims on the deficient-performance component of *Strickland*.

¶20    To establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Counsel's challenged conduct is judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Although attorneys are not "categorially excused from failure to raise an argument not supported by existing legal precedent," *State v. Silva*, 2019 UT 36, ¶ 19, 456 P.3d 718, "it is not the case that attorneys must raise every conceivable objection in order to render constitutionally effective assistance," *State v. Samora*, 2021 UT App 29, ¶ 44, 484 P.3d 1206, *cert. granted*, 497 P.3d 828 (Utah 2021). Rather, attorneys are entitled to "pick [their] battles," and "[w]e must view a decision to not object in context and determine whether correcting the error was sufficiently important under the circumstances that failure to do so was objectively unreasonable—i.e., a battle that competent counsel would have fought." *State v. Ray*, 2020 UT 12, ¶ 32, 469 P.3d 871. Additionally, "the failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *State v. Karren*, 2018 UT App 226, ¶ 31, 438 P.3d 18 (cleaned up).

¶21    We are also mindful that "'judicial scrutiny of counsel's performance is highly deferential' and includes a strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Reigelsperger*, 2017 UT App 101, ¶ 92, 400 P.3d 1127 (cleaned up) (quoting *Strickland*, 466 U.S. at 689–90). Indeed, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688; *accord Silva*, 2019 UT 36, ¶ 20; *State v. Jones*, 2020 UT App 31, ¶ 44, 462 P.3d 372.

¶22   We now examine Calata's two claims of ineffective assistance in turn.

A.    Apportionment of Fault

¶23   Calata asserts that defense counsel was ineffective "in failing to request apportionment of fault" between Calata and the troopers. In Calata's view, both the "Restitution Act and the Utah Liability Reform Act (LRA) demonstrate that the district court should apportion fault in restitution proceedings if requested to do so."[5] Because defense counsel did not argue that the court should apportion damages in the restitution proceedings, Calata contends his counsel's performance fell below an objective level of reasonableness, which, in turn, prejudiced him.

¶24   In support, Calata first argues that "[t]he Restitution Act and case law interpreting it . . . demonstrate that the causation language of the Restitution Act should be interpreted to require apportionment as part of the causation analysis." The Restitution Act "requires courts to order restitution when a defendant enters into a plea disposition or is convicted of criminal activity that has resulted in pecuniary damages." *State v. Ogden*, 2018 UT 8, ¶ 26, 416 P.3d 1132 (cleaned up); Utah Code Ann. § 77-38a-302(1) (LexisNexis 2017). Calata argues that "Utah's appellate courts have long recognized the legislature's intent to incorporate civil standards into the Restitution Act."

¶25   Specifically, Calata points to *State v. Laycock*, 2009 UT 53, 214 P.3d 104, in which the Utah Supreme Court held "that issues

---

5. The LRA "delineates the apportionment of comparative fault in civil actions." *State v. Grant*, 2021 UT App 104, ¶ 30, 499 P.3d 176. It provides that the "fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, to any person immune from suit, and to any other [non-parties] . . . for whom there is a factual and legal basis to allocate fault." Utah Code Ann. § 78B-5-818(4)(a) (LexisNexis 2018).

of comparative negligence may be relevant in determining restitution." *Id.* ¶ 27. Calata then turns to *State v. Ogden*, which addressed causation in the Restitution Act. 2018 UT 8, ¶¶ 26–48. There, the supreme court explained that the Restitution Act addresses causation in two provisions. *Id.* ¶ 32. First, "[t]he statute allows the district court to enter an order when a defendant enters into a plea disposition or is convicted of criminal activity that has *resulted in* pecuniary damages." *Id.* (cleaned up). And second, "the district court awards complete restitution to compensate a victim for all losses *caused by* the defendant." *Id.* (cleaned up). The relevant language the court analyzed was "resulted in" and "caused by." *See id.* (cleaned up). After examining the Restitution Act's "structure," the court concluded "that the Legislature intended that the same causation standard apply in a restitution hearing that would apply in a parallel civil action." *Id.* ¶ 38. That is, a proximate cause standard. *Id.* ¶ 39.

¶26   From this analysis, Calata extrapolates that "[u]nder the language and structure of the Restitution Act, 'caused by' and 'resulted in' also requires apportionment." While he concedes that "*Laycock* and *Ogden* did not decide the question of whether apportionment applies in restitution proceedings," Calata contends that "the analysis in these cases dictates that the same apportionment standards that would apply in a parallel civil action apply in restitution proceedings, just as the same causation standard that applies in a parallel civil action applies to restitution proceedings."

¶27   Next, Calata contends that "the plain language of the LRA demonstrates that a defendant is entitled to apportionment when requested in restitution proceedings." Under the LRA, "[t]he fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, to any person immune from suit, and to any other person identified under Subsection 78B-5-821(4) for whom there is a factual and legal basis to allocate fault." Utah Code Ann. § 78B-5-818(4)(a) (LexisNexis 2018).

¶28 Calata argues that the LRA applies to restitution proceedings because its definition of "fault" "encompasses criminal acts." The LRA defines "fault" as "any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product." *Id.* § 78B-5-817(2). Relying on *Graves v. North Eastern Services, Inc.*, 2015 UT 28, 345 P.3d 619, Calata proffers that "[a]*ny* breach of duty, act, or omission counts as fault so long as it is proximately connected to injury or damages." *Id.* ¶ 49. Because "a criminal act qualifies both as a 'breach of legal duty' and an 'act' proximately causing the injury or damages," Calata reasons that his "criminal act constitutes 'fault' under the LRA and is therefore subject to apportionment."

¶29 And finally, Calata asserts that the LRA would have required fault to be apportioned between him and the troopers had his counsel requested it. The LRA provides that "[a] person immune from suit may not be named as a defendant, but fault may be allocated to a person immune from suit solely for the purpose of accurately determining the fault of the person seeking recovery and all defendants." Utah Code Ann. § 78B-5-821(2) (LexisNexis 2018). Here, Calata argues that although the troopers are immune from suit, he was "entitled to have fault allocated between him . . . and the troopers" because their "acts" also fall under the LRA's "fault" definition. Specifically, Calata contends that "the troopers' acts in intentionally driving their vehicles into [his] car fall under the broad and categorical definition of fault, as an intentional tort, any intentional act, and indeed, any *act* that proximately causes or contributes to injury or damages—that is, the damage to their vehicles." (Cleaned up.) Calata also contends that "there is proximate cause between the troopers' acts because their driving maneuvers were a but-for cause of the damage to their vehicles, and it was foreseeable that their vehicles would incur damage as a result of their maneuvers."

¶30　In Calata's view, his arguments are "well-founded on established caselaw and statutory language," and it was objectively unreasonable for his counsel "not to argue the apportionment issue to the district court." Although Calata has presented a thoughtful argument in support of his claim that "a defendant is entitled to apportionment when requested in restitution proceedings," we do not share his view that it was objectively unreasonable for defense counsel not to make these arguments.

¶31　First, the legal argument Calata weaves together from various sources is a difficult one. *See State v. Grant*, 2021 UT App 104, ¶ 27 & n.9, 499 P.3d 176 (stating that resolving "whether comparative fault principles apply to restitution proceedings" "would be difficult"). Utah appellate courts have not addressed whether the causation language in the Restitution Act should be interpreted to allow apportioning fault or whether the LRA applies in this context. *See Ogden*, 2018 UT 8, ¶ 32 n.7 ("We do not decide whether the [LRA] has any place in restitution proceedings because Ogden did not preserve the argument below."); *Grant*, 2021 UT App 104, ¶ 27 ("[W]e assume, without deciding, that comparative fault principles apply to restitution proceedings."). It is also not expressly provided in the statute that the LRA applies in this context, nor is there authority that indicates it does.

¶32　Further, the authority on which Calata relies would have to be extended to reach the result for which Calata advocates. For example, *Laycock* is a negligent homicide case in which the court held "that issues of comparative negligence *may* be relevant in determining restitution." *Laycock*, 2009 UT 53, ¶¶ 25, 27 (emphasis added). Not only did our supreme court stop short of saying issues of comparative negligence *are* relevant in determining restitution, but whether the court would have made the same observation in a case involving an intentional crime, like failure to

stop at command of police,[6] is questionable. And while the supreme court in *Ogden* concluded that the legislature "intended that the same causation standard apply in a restitution hearing that would apply in a parallel civil action," 2018 UT 8, ¶ 38, it did not hint that the apportionment standard should likewise be imported into the Restitution Act's causation analysis.

¶33　Given the lack of clarity in the law and the difficulty defense counsel would have faced in advocating for the application of the apportionment standard in restitution proceedings, we are unpersuaded that it was unreasonable for defense counsel to not make the argument Calata now crafts on appeal. While it is true that we do not "judge an attorney's performance based only on settled law," *Silva*, 2019 UT 36, ¶ 19, we agree with the State that without a clear basis in the statutory language and given the lack of legal precedent, defense counsel's performance here did not fall below an objective standard of reasonableness, *see Jones*, 2020 UT App 31, ¶¶ 46–47 (explaining that counsel could reasonably conclude there was no legal problem to correct and that "such a conclusion is particularly reasonable given that no Utah appellate court has squarely addressed" the relevant legal issue).

¶34　Further, even if defense counsel believed she could succeed in persuading the court to extend the law to apply apportionment principles in restitution hearings, it would not have been unreasonable for counsel to conclude that arguing that the troopers were at fault would have been a futile effort. *See Karren*, 2018 UT App 226, ¶ 31 ("[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." (cleaned up)).

¶35　The LRA provides that "[a] person immune from suit may not be named as a defendant, but *fault* may be allocated to a

---

6. *See State v. Bird*, 2015 UT 7, ¶ 23, 345 P.3d 1141 (stating that "the failure-to-respond offense . . . implicates an intentional mens rea").

person immune from suit solely for the purpose of accurately determining the *fault* of the person seeking recovery and all *defendants*." Utah Code Ann. § 78B-5-821(2) (LexisNexis 2018) (emphases added). As relevant here, fault is defined in the LRA as "any *actionable* breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery." *Id.* § 78B-5-817(2) (emphasis added). Thus, to apportion fault to the troopers, defense counsel would have had to show that they were at "fault" by first establishing that their conduct was "actionable." *See id.* Although Calata argues that at least one of the troopers' PIT maneuvers violated the Utah Department of Public Safety policies and procedures, he has not undertaken the analysis to demonstrate that either trooper's conduct was "actionable"[7] and therefore constituted fault under the LRA that could be apportioned. Without additional analysis on this point, it is not apparent to us that either trooper's conduct fell under the LRA, and thus Calata has not shown that it was unreasonable for defense counsel to harbor similar doubt.

¶36    Finally, even if fault could legally be apportioned to the troopers, it would not have been unreasonable for defense counsel

---

7. In *Graves v. North Eastern Services, Inc.*, 2015 UT 28, 345 P.3d 619, in reaching its conclusion that the definition of fault in the LRA encompasses "intentionally tortious activity," the Utah Supreme Court observed that the "core definition is broad and categorical." *Id.* ¶ 49. Quoting the statute, the court stated that the definition of fault "extends to 'any actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages.'" *Id.* (quoting Utah Code Ann. § 78B-5-817(2)). Two sentences later, the court then emphasized, "*Any* breach of duty, act, or omission counts as fault so long as it is proximately connected to injury or damages." *Id.* In making the latter statement, the court omitted the word "actionable," but we do not read that omission as intentional or meaningful. After all, the word "actionable" is part of the LRA's definition of fault as the supreme court acknowledged. *See id.*

to conclude that seeking apportionment would be futile under the circumstances. Assuming the LRA applies to the Restitution Act and that at least one trooper was at fault for the damages incurred by the patrol cars, the district court could not have apportioned fault to them unless their "combined percentage or proportion of fault" was "40% or more." *See id.* § 78B-5-819(2)(b). In other words, if the troopers' combined percentage or proportion of fault was less than 40%, the court would have been statutorily obligated to "reduce that percentage or proportion of fault to zero and reallocate that percentage or proportion of fault to the other parties . . . for whom there is a factual and legal basis to allocate fault." *See id.* § 78B-5-819(2)(a).

¶37 Here, defense counsel could have reasonably concluded that the district court would not find that the troopers' combined percentage or proportion of fault equaled 40% or more. After all, it was Calata who fled from the troopers and engaged in a high-speed chase that posed a danger to the public. And the troopers performed their PIT maneuvers only after Calata had slowed down but still demonstrated an intent to flee. Given these facts, reasonable counsel could conclude that undertaking the considerable effort to convince the court that apportionment should be considered in setting restitution would ultimately be a futile effort because the court was unlikely to apportion more than 40% of the damages to the troopers. *See Karren*, 2018 UT App 226, ¶ 31.

¶38 In sum, because defense counsel would have faced significant hurdles in attempting to persuade the district court to apportion damages between Calata and the troopers in setting restitution, we conclude that it was not objectively unreasonable for counsel not to raise apportionment arguments related to the Restitution Act and LRA before the district court. Therefore, Calata has not established ineffective assistance of counsel. *See Archuleta*, 2011 UT 73, ¶ 41.

B.     Constitutional Arguments

¶39     Last, Calata contends that defense counsel was ineffective in failing to argue to the district court that the Restitution Act impermissibly infringes on his constitutional right to have a jury determine the damages forming the basis of a civil judgment and "also infringes on the due process rights he would have had in a civil jury trial," which includes "the right to have apportionment for fault . . . like he would have had in a civil court." Thus, in Calata's view, the Restitution Act is unconstitutional, and defense counsel acted deficiently in not making such an argument to the district court. He also claims that he was prejudiced as a result.

¶40     Article I, Section 10 of the Utah Constitution "guarantees the right of jury trial in civil cases." *Simler v. Chilel*, 2016 UT 23, ¶ 10, 379 P.3d 1195 (cleaned up); *see also* Utah Const. art. I, § 10 ("A jury in civil cases shall be waived unless demanded."). The Restitution Act defines the "pecuniary damages" resulting from criminal activity that are part of a restitution order. "'Pecuniary damages'" means, in part, "all demonstrable economic injury, whether or not yet incurred, including those *which a person could recover in a civil action* arising out of the facts or events constituting the defendant's criminal activities." Utah Code Ann. § 77-38a-102(6) (LexisNexis 2017) (emphasis added). And an order of complete restitution ultimately will be entered "on the civil judgment docket." *Id.* § 77-38a-401(1). Consequently, "even though the restitution proceeding takes place as part of a criminal proceeding, the end result is a civil judgment that a victim is entitled to enforce." *Ogden*, 2018 UT 8, ¶ 38. Calata derives from this and other authority that the Utah Constitution's right to a jury trial in civil cases entitles him to have a jury determine the damages for purposes of a restitution order.

¶41     Calata further argues that defense counsel should have raised these constitutional arguments because counsel should have been aware of a footnote in *Ogden* in which the defendant there contended that the Restitution Act is unconstitutional because it denied him "due process by preventing him access to

the procedural remedies he would have had in civil court." *Id.* ¶ 24 n.3 (cleaned up). Although the supreme court concluded that the "due process argument [was] unpreserved and decline[d] to review [the defendant's] ineffective assistance of counsel argument because it [was] inadequately briefed," *id.*, Calata asserts that "*Ogden* would have alerted reasonable counsel to the importance of considering constitutionality issues in regard to the LRA in restitution proceedings."

¶42    Once again, Calata presents interesting arguments. But we need not definitively determine whether the Restitution Act is in fact unconstitutional in the ways Calata claims. *See State v. Huey*, 2022 UT App 94, ¶¶ 48, 53, 516 P.3d 345; *State v. Squires*, 2019 UT App 113, ¶ 32 n.7, 446 P.3d 581. Instead, because Calata did not preserve these arguments in the district court, our obligation is limited to assessing whether it was "objectively unreasonable" for defense counsel not to raise these constitutional objections. *See Ray*, 2020 UT 12, ¶ 32. We conclude that it was not.

¶43    Not only has no Utah appellate court addressed whether criminal defendants have a right to jury trial on damages in restitution proceedings, but on the facts of this case, it would not have been unreasonable for defense counsel to conclude that Calata had little to gain from making these constitutional arguments. *See Strickland*, 466 U.S. at 690 (judging counsel's challenged conduct "on the facts of the particular case"). Even if defense counsel ultimately could have persuaded the district court that a jury should determine the damages for which Calata was liable, counsel could have reasonably decided that a jury was unlikely to be sympathetic toward Calata or to find that the troopers were at fault. *See State v. Gallegos*, 2020 UT 19, ¶ 34, 463 P.3d 641 ("We give wide latitude to trial counsel to make tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." (cleaned up)). Indeed, Calata fled from the troopers and endangered the public by leading a high-speed chase that ended only when the troopers executed PIT maneuvers. Under the circumstances, counsel could have reasonably concluded that a jury would not be receptive to

Calata's efforts to minimize his own fault for these events and ensuing damage and thus Calata was better off (or at least no worse off) arguing his case to the judge. Thus, defense counsel did not act deficiently under *Strickland,* and Calata's claim for ineffective assistance of counsel fails. *See Archuleta,* 2011 UT 73, ¶ 41.

## CONCLUSION

¶44    We reject Calata's two claims of ineffective assistance of counsel and affirm the district court's order of complete restitution. But we conclude that the court erred when it declined to determine court-ordered restitution. Accordingly, we affirm in part, reverse in part, and remand for the district court to determine court-ordered restitution in accordance with the Restitution Act.

——————