**2026 UT App 90**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL CURWICK,
Appellant.

Opinion
No. 20240348-CA
Filed June 11, 2026

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 231500076

Freyja Johnson, Rachel Phillips Ainscough, and
Jessica Hyde Holzer, Attorneys for Appellant

Derek E. Brown and Aubrey Bisbee,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1 After Michael Curwick was convicted of aggravated kidnapping, the district court entered an order of restitution that included an amount for lost wages for the kidnapping victim's mother (Mother). On appeal, Curwick asserts the district court erred in imposing restitution for Mother's lost wages, claiming the State presented insufficient evidence of causation. We disagree and affirm the district court's restitution order.

## BACKGROUND[1]

### *The Aggravated Kidnapping*

¶2 On July 9, 2021, Curwick was involved in an altercation with a woman (Victim) who was staying with him in his apartment. Early that morning, Curwick became angry and began to accuse Victim of stealing from him. After Victim denied his accusation, Curwick "start[ed] to flip out." He grabbed Victim by the neck and "held her up against the wall." Over the next few hours, Curwick continued to detain Victim. During this time, he screamed at her, hit her in the face with a book and a large metal flashlight, and kicked her in the ribs. At one point, Curwick grabbed Victim by the hair and began whipping her around "like a rag doll." He then grabbed a pair of scissors and began "sawing" off chunks of her hair. Curwick repeatedly threatened to kill Victim and "told [her] directly [she] couldn't leave." Before the police eventually intervened, Curwick made Victim write down the names and addresses of family members "so he could go after them, too."[2]

---

1. Our recitation of the facts is taken from Curwick's trial, sentencing, and restitution hearing. "Concerning the facts giving rise to [Curwick's] convictions, we review the record facts in a light most favorable to the jury's verdict and recite them accordingly." *State v. Watson*, 2021 UT App 37, n.1, 485 P.3d 946 (cleaned up). Otherwise, "we recite the facts consistent with the district court's factual findings made in support of its restitution order." *State v. Calata*, 2022 UT App 127, n.2, 521 P.3d 920.

2. Both Victim and Mother asserted that Curwick had threatened Victim's family members. We note that while the district court found it was Mother's "genuine belief" that Curwick had threatened her, it never made an explicit factual finding on the

(continued…)

¶3 Curwick was subsequently convicted of aggravated kidnapping.[3] Afterward, Mother submitted a letter to the court describing the negative effects both she and Victim continued to experience as a result of Curwick's crime, such as "interrupted sleep, anxi[ety], panic, seclusion, fears," post-traumatic stress, and missed work.

### The Order of Restitution

¶4 After Curwick's sentencing, the State filed a motion requesting restitution for Victim, Mother, and the Utah Office for Victims of Crime (UOVC). The request included $7,259.34 in lost wages for Mother—some of which had been reimbursed by UOVC. The State provided proof of Mother's employment and income, a computation of the total number of work hours Mother had missed "as a result of the kidnapping and assault of her daughter," and a list of payments made by UOVC. According to the State, Mother had "missed work because of trauma" and "to attend court hearings." In support of that contention, the State provided the following pieces of evidence.

¶5 First, the State presented a form completed by Mother's health care provider, documenting that she had been diagnosed with post-traumatic stress disorder (PTSD). The provider indicated Mother had first been seen on July 21, 2021, and was experiencing "PTSD [and] panic attacks w[ith] labile emotions,"

---

record as to whether Curwick had done so or not. Curwick has not asserted on appeal that he never made such threats, so we view this fact as "consistent with" the court's factual findings. *See Calata*, 2022 UT App 127, n.2.

3. Curwick was also convicted of several other offenses not relevant here. We further note that Curwick previously appealed his conviction for aggravated kidnapping, and this court affirmed his conviction in an unpublished order.

chest pain, and symptoms "related to mania" as a result of the incident involving Victim. When asked about any "pre-existing impairment," the provider listed Mother's history of "well-controlled anxiety and depression" but noted that Mother's "diagnosed condition" of PTSD "result[ed] from [the] reported incident." Based on the diagnosis, Mother's provider estimated Mother would be unable to work from July 9, 2021, to September 30, 2021.

¶6 Second, the State also provided several claim forms that Mother had filled out and submitted to UOVC for the days she missed work. When asked to "specify the reason for missed work and how it [was] related to the crime," Mother explained, "The perpetrator kidnapped my daughter. He threat[ened] to kill her, me[,] and her siblings. He researched my add[ress]," and "I attended the court. On court days I am too overwhelmed to think and I cry all day [and] I talk with my daughter with updates and support."

¶7 Finally, the State submitted a sworn declaration from one of UOVC's restitution specialists (Restitution Specialist) explaining Victim's and Mother's applications for assistance. The declaration explained the steps UOVC had taken to determine eligibility, such as reviewing the police report from the incident. As to Mother's lost wages, the declaration stated Mother "missed work both for mental health concerns caused by [Curwick's] criminal conduct[] and to attend [Curwick's] court proceedings." It explained that UOVC contacted Mother's employer; "contacted [Mother's] mental health provider, who confirmed that [Mother] was diagnosed with PTSD as a result of the criminal incident, and that it left her unable to work from July 9, 2021, to September 30, 2021"; and also obtained "confirmation from court employees that [Mother] had in fact attended court to verify lost wages for attending court proceedings."

¶8    The district court held a restitution hearing at which the State offered this same evidence. After hearing arguments, the court ruled from the bench. It found, among other things, that the evidence "support[ed] a finding by a preponderance of the evidence that . . . Curwick's criminal conduct proximately caused [Mother's] loss of income." The court concluded that the medical form, Mother's written statements, and Restitution Specialist's declaration, "[t]aken together," were sufficient to show proximate cause. Accordingly, the court ordered Curwick to pay restitution in an amount that included Mother's lost wages.

ISSUE AND STANDARD OF REVIEW

¶9    Curwick challenges the district court's order of restitution for Mother's lost wages as lacking sufficient evidence of proximate cause. "We review a district court's finding of proximate cause for clear error. Thus, when a defendant argues that the evidence was insufficient to support a restitution order, the defendant must demonstrate that the clear weight of the evidence contradicts the court's ruling." *State v. Murray*, 2023 UT App 52, ¶ 37, 530 P.3d 982 (cleaned up).

ANALYSIS

I. Evidence of Proximate Cause

¶10   The Crime Victims Restitution Act provides that a convicted defendant shall be ordered "to pay restitution to all victims" "(i) in accordance with the terms of any plea agreement in the case; or (ii) for the entire amount of pecuniary damages that are proximately caused to each victim by the criminal conduct of

the defendant."[4] Utah Code § 77-38b-205(1)(a). In this context, "the proximate cause standard requires a showing that the crime, in a natural and continuous sequence, unbroken by any new cause, produced the injury and that the injury would not have occurred absent the crime." *State v. Murray*, 2023 UT App 52, ¶ 36, 530 P.3d 982 (cleaned up). "The burden is on the State to prove proximate cause," which "requires proof of two elements: (1) but-for causation and (2) foreseeable harm." *Id.* (cleaned up). "Furthermore, a [district] court's restitution award must rely on a sufficient evidentiary basis, and it may award restitution only in cases where liability is clear as a matter of law and where the commission of the crime clearly establishes causality of the injury or damages." *State v. Devore*, 2026 UT App 33, ¶ 41, 587 P.3d 1007 (cleaned up).

¶11 Here, Curwick contends the district court erred "by ordering restitution for Mother's lost wages without adequate evidence of causation." He asserts the medical form, Mother's written statements, and Restitution Specialist's declaration "did not support that Mother's lost wages were proximately caused by [his] conduct." The State, in turn, argues the court correctly relied not only on those documents but also on Mother's victim impact letter. In response, Curwick argues "[t]he district court did not indicate that it relied on Mother's victim impact letter to support its proximate cause determination" and, even if it had, the letter would "not tip the scales." But we need not determine whether the district court considered Mother's letter because, even without

---

4. While Mother was not a direct victim of the aggravated kidnapping, the statute broadly defines a victim as "any person who has suffered pecuniary damages that are proximately caused by the criminal conduct of the defendant," including "a parent . . . of a victim." Utah Code § 77-38b-102(27)(a), (b)(iv).

it, the court was presented with sufficient evidence of proximate cause.[5]

A.    The Medical Form

¶12    The State's evidence that Curwick's criminal conduct proximately caused Mother's lost wages included the medical form filled out by Mother's health care provider. According to the form, Mother's provider diagnosed her with PTSD and estimated she would be unable to work for approximately twelve weeks because of the crime. Curwick contends the court was wrong to rely on the medical form, arguing the form did not attribute Mother's trauma to the kidnapping or contain any "medical opinion or conclusion" that Mother's preexisting mental health conditions "were exacerbated by [his] actions." Curwick is mistaken. The provider noted Mother had a history of "well-controlled anxiety [and] depression" but specifically indicated that Mother's PTSD diagnosis "*result*[*ed*] *from*" the criminal incident. (Emphasis added.) The medical form was thus direct evidence of the causal relationship between Curwick's conduct and Mother's PTSD and subsequent inability to work.

B.    Mother's Written Statements

¶13    The State also presented several claim forms that Mother had personally filled out and submitted to UOVC. The forms contained written statements from Mother describing her reasons for missing work, asserting Curwick had threatened to kill her and Victim and describing the crime's effect on her mental health and ability to work (e.g., "On court days I am too overwhelmed to think and I cry all day . . . ."). Curwick challenges the sufficiency of these statements for a variety of reasons, including characterizing them as a poor substitute for sworn testimony.

---

5. Curwick has not argued foreseeability on appeal, so we consider only whether the State proved but-for causation.

While his criticism may go to the relative evidentiary weight of Mother's statements, those statements still provided at least some evidence of causation.

### C.    Restitution Specialist's Declaration

¶14    Finally, the State's evidence of proximate cause included the sworn declaration from Restitution Specialist. The declaration explained Mother's application for assistance from UOVC and the steps UOVC had taken to determine her eligibility. Curwick argues the district court's reliance on Restitution Specialist's declaration was improper, pointing to our decision in *State v. Blake*, 2022 UT App 104, 517 P.3d 414.

¶15    In *Blake*, the defendant was ordered to pay restitution to reimburse UOVC for its payment of a victim's medical bills. *See id.* ¶ 7. The State had presented a bare-bones list of payments made by UOVC and proffered testimony from two UOVC representatives regarding "the standard processes the office usually employed before authorizing any payment." *Id.* ¶¶ 4–6. "Neither representative had personal knowledge regarding the payments in question, but they explained that before UOVC would authorize a payment, a claims analyst would . . . verify that the treatment received was 'crime-related.'" *Id.* ¶ 6. The State argued that UOVC's authorization of the payments was "proof enough" that the victim's medical bills were proximately caused by the defendant's conduct. *Id.* We reversed the district court's order of restitution, explaining that "a restitution order based almost exclusively on such trust in UOVC's methods and its assessment of 'crime-relatedness' inappropriately delegates the determination of proximate cause to UOVC" and concluding that "the evidence presented by the State was not sufficient to allow the court to make its own, independent determination as to causation." *Id.* ¶¶ 12–13 (cleaned up).

¶16 Here, Curwick argues that by relying on Restitution Specialist's statements, the district court did what *Blake* forbade. But Curwick takes our holding in *Blake* too far; while a district court may not simply treat UOVC's ultimate determination of "crime-relatedness" as sufficient evidence of proximate cause, *id.* ¶ 12, it does not follow that the court may not rely upon *any* statements from UOVC.

¶17 This distinction is demonstrated in *State v. Murray*, 2023 UT App 52, 530 P.3d 982. There, the district court issued a restitution order that included the victim's lost wages that had been reimbursed by UOVC. *See id.* ¶¶ 1, 7. At the restitution hearing, the State presented testimony from a UOVC representative regarding UOVC's handling of the victim's application for assistance. *See id.* ¶ 9. As to the victim's lost wages, the representative testified about the extent of the victim's missed work, including that UOVC had received documentation from the victim's employer as well as a corroborating "health provider statement." *Id.* ¶ 10. The State also presented testimony from the victim, who testified "about the effects of the [crime] on her psyche and her ability to function." *Id.* ¶ 40.

¶18 We subsequently affirmed the district court's order of restitution for the victim's lost wages, noting that the victim's testimony, "coupled with the evidence presented by UOVC about the days that she missed at work, was sufficient to support the court's finding that [the defendant's] criminal conduct proximately caused [the victim] to miss this work, thereby causing these damages." *Id.* ¶ 49. *Murray* thus illustrates that there are circumstances in which a district court may properly consider statements from UOVC when evaluating proximate cause. While the court may not substitute UOVC's judgment for its own, evidence of the steps taken and information gathered by UOVC in a victim's case may often be useful to the court when making

"its own, independent determination as to causation."[6] *See Blake*, 2022 UT App 104, ¶ 13 (cleaned up).

¶19    Here, like in *Murray*, the declaration from Restitution Specialist contained specific details about the approval process for Mother's claims, such as UOVC contacting Mother's mental health provider to confirm that she was unable to work for several months due to her PTSD from the kidnapping incident. The district court did not err by relying on that information. And like the other evidence presented by the State, Restitution Specialist's declaration also showed that Mother's lost wages were caused by Curwick's criminal conduct.

¶20    In sum, having reviewed the evidence presented to the district court—including the medical form, Mother's written statements, and Restitution Specialist's declaration—we are not persuaded that the State failed to provide sufficient evidence of proximate cause. We agree with the district court that, "[t]aken together," the State's evidence was sufficient to establish that Curwick proximately caused Mother's lost wages.

## CONCLUSION

¶21    Because Curwick has not demonstrated that the clear weight of the evidence contradicts the district court's ruling, we affirm the order of restitution requiring him to pay Mother's lost wages.

———————

6. Curwick places great importance on the presence of victim testimony in *Murray*. But victim testimony is not required for a district court to consider evidence from UOVC. *See State v. Blake*, 2025 UT 21, ¶¶ 43–44, 582 P.3d 705 (upholding a restitution order supported only by materials and testimony provided by UOVC).