**2016 UT App 177**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MARTIN J. MACNEILL,
Appellant.

Opinion
No. 20140875-CA
Filed August 18, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 091400178

Jonathan T. Nish and B. Kent Morgan, Attorneys
for Appellant

Sean D. Reyes, Ryan D. Tenney, and Erin Riley,
Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

VOROS, Judge:

¶1      Defendant Martin J. MacNeill appeals his conviction for forcible sexual abuse, a second degree felony. We affirm.

BACKGROUND

¶2    MacNeill's wife was killed in April 2007.[1] Afterwards, their adult daughter (Victim) moved back home to help MacNeill with her four younger siblings. Because all the home's bedrooms were occupied by the younger children, Victim and MacNeill both slept in the master bedroom—she in the bed, he on a sofa. On May 23, 2007, Victim woke up to find MacNeill "rubbing [her] buttocks," his hand underneath her underwear. He was also "licking . . . and kissing" her hand. Victim slapped his hand away and got out of the bed. When she asked what he was doing, he said he was "sorry" and that he had thought she was her mother.

¶3    The next morning, Victim told her older sister (Sister) what had happened the night before. MacNeill spoke to Victim and Sister that day and acknowledged that he had touched Victim. He said he was glad it was Victim in the room and not one of her younger siblings, because he "could have gotten in trouble."

¶4    Believing her siblings were not safe living with MacNeill, Victim continued to live in the family home to protect them. Two weeks after the incident, Victim argued with MacNeill, accusing him of killing her mother and questioning his relationship with a woman who had moved into MacNeill's home after Victim's mother died. MacNeill later had police remove Victim from the home. As police escorted her away, Victim told them she thought MacNeill had killed her mother. But she did not tell them that MacNeill had sexually abused her. She worried that if she reported the abuse, MacNeill "would not allow [her] to have any" contact with her siblings.

---

1. MacNeill was convicted of her murder; that conviction is the subject of another pending appeal.

¶5    Victim attempted to "calm the situation down" and "mend some of the friction" with MacNeill by writing and telephoning him to ask his forgiveness. MacNeill eventually allowed her to live in the home again. Victim began speaking with MacNeill about giving her custody of her younger siblings. Although he was receptive to the idea at first, he later told Victim that he planned to give custody to a friend whom the siblings barely knew. Victim told MacNeill that if he did not agree to give her custody, she would report him for sexually abusing her. MacNeill said that he could do whatever he wanted with the children and that if she fought for custody, he would "destroy" her.

¶6    On September 1, 2007, Victim called police and reported the sexual abuse. She recounted the abuse in detail in a recorded interview ten days later. The State charged MacNeill with one count of forcible sexual abuse and one count of witness tampering. MacNeill was bound over on both charges, but in April 2008, the State moved to dismiss the entire case without prejudice. The trial court granted the motion.

¶7    On January 15, 2009, the State refiled the charges for forcible sexual abuse and witness tampering. In May 2009, MacNeill moved to dismiss the entire case, arguing that the State violated his due process rights when it refiled the case and that the delays in bringing him to trial violated his right to a speedy trial. The motion was denied. The magistrate bound MacNeill over on the forcible sexual abuse charge but dismissed the witness tampering charge.

¶8    MacNeill sought interlocutory review of the trial court's denial of his due process and speedy trial claims. This court granted his petition. In September 2012, we affirmed the trial court's resolution of both issues. *See State v. MacNeill*, 2012 UT App 263, 286 P.3d 1278. MacNeill then filed a petition for

certiorari with the Utah Supreme Court, which the court denied. The case then returned to the trial court.

¶9 While this case was pending, the State filed murder charges against MacNeill for the death of his wife. The court scheduled his trial on the murder charges for October and November of 2013. MacNeill requested that his forcible sexual abuse trial be delayed until after the murder trial. The trial court agreed and scheduled the trial for the forcible sexual abuse charge for December 2013. MacNeill's counsel later asked for more time to prepare between the two trials. Over the State's objection, the court rescheduled the trial for February 2014.

¶10 On November 8, 2013, MacNeill was convicted of murder. Two months later, he filed a motion to change venue in this case, alleging that "excessive publicity" surrounding the murder trial would impair his ability to receive a fair trial in Utah County. The trial had been live-streamed, profiled by the national media, and reported on daily by local and statewide newspapers.

¶11 Before the court ruled on MacNeill's motions, MacNeill's counsel filed a petition seeking a competency evaluation of MacNeill. The court stayed all proceedings until the competency review could be completed. Two competency evaluations were submitted to the court. One of the evaluators reported that MacNeill had repeatedly refused to cooperate, delaying the evaluation for about two months. On May 5, 2014, the court found MacNeill to be competent and rescheduled the trial for July 2014.

¶12 On May 14, 2014, MacNeill filed another motion to dismiss the case, asserting that his due process rights had been violated because the State had destroyed the recording of Victim's September 11, 2007 police interview. The prosecutor admitted that the recording had been inadvertently erased, but stated that "a detailed written narrative of the interview" had been given to MacNeill in October 2007.

¶13    Two weeks before trial, the court ruled on all outstanding motions. It denied MacNeill's motions to change venue and to dismiss due to the destruction of evidence.

¶14    The trial took place in July 2014. The trial court conducted voir dire on the first day. The court identified MacNeill by name, read the charges against him, and asked if any prospective jurors knew him or "may have heard of him." Of the eight jurors who were ultimately empaneled, only one had heard of MacNeill.

¶15    Defense counsel sought to question each prospective juror individually in chambers about their knowledge of MacNeill's murder case and whether they would be biased because of it. The court hesitated, observing that these questions would necessarily inform the jurors about the murder case, but eventually agreed. Defense counsel questioned each of the eight jurors who eventually sat. After both parties exercised their peremptory challenges, defense counsel passed the eight jurors for cause.

¶16    The prosecutor did not mention the murder case in his opening statement. Defense counsel referred to the murder case multiple times in his opening statement, explaining that Victim's belief that MacNeill killed her mother gave her an "ulterior motive[]" to falsely accuse MacNeill of sexual abuse. During direct examination, Victim repeatedly volunteered that MacNeill had "murdered" or "killed" her mother. Defense counsel did not object to any of these statements. Instead, on cross-examination, he used Victim's statements to attack her credibility. In closing argument, defense counsel reiterated that because Victim believed MacNeill murdered her mother, she "obviously" had "a motive and strong interest to at least slant [her] testimony, if not misrepresent the truth."

¶17    The jury convicted MacNeill of forcible sexual abuse, a second degree felony.

ISSUES

¶18   First, MacNeill contends that the trial court abused its discretion in denying his motion to change venue.

¶19   Second, MacNeill contends that his counsel was ineffective for not objecting to Victim's testimony that she thought MacNeill murdered her mother.

¶20   Finally, MacNeill contends that the delays in bringing this case to trial violated his right to a speedy trial.

ANALYSIS

I. Change of Venue

¶21   MacNeill contends that the trial court abused its discretion in denying his motion to change venue "because a fair and impartial trial was impossible in the jurisdiction in which [he] was tried."

¶22   "[I]f a party believes that a fair and impartial trial cannot be had in the court location or in the county where the action is pending, that party may move to have . . . the case transferred to a court location in a county where a fair trial may be held." Utah R. Crim. P. 29(d)(1). "A decision to deny or grant a motion for a change of venue is within the discretion of the trial court and will not be reversed absent clear abuse of that discretion." *State v. Cayer*, 814 P.2d 604, 608 (Utah Ct. App. 1991). "The ultimate test of whether a failure to change venue constitutes an abuse of discretion is whether the defendant was tried by a fair and impartial jury." *State v. Lafferty*, 749 P.2d 1239, 1250 (Utah 1988). In short, "because the purpose of a change of venue is to protect the parties' right to a fair trial by an impartial jury, once a jury has been impaneled, the determinative question is whether the impaneled jurors were in fact impartial." *Butterfield v. Sevier*

*Valley Hosp.*, 2010 UT App 357, ¶ 20, 246 P.3d 120. "Thus, defendant has the burden of demonstrating the existence of actual prejudice on his appeal." *State v. Bishop*, 753 P.2d 439, 459 (Utah 1988), *overruled on other grounds*, 889 P.2d 393 (Utah 1994). And "[e]vidence of the pervasiveness of pretrial publicity is not enough to answer the question of whether the jury was fair and impartial." *Lafferty*, 749 P.2d at 1250.

¶23 When a jury panel is seated, a defendant who passes the jury panel for cause thereby acknowledges that the jury is impartial. *State v. Widdison*, 2001 UT 60, ¶ 39, 28 P.3d 1278. Thus, affirmatively passing the jury for cause bars appellate review of any alleged error in the jury selection process under the invited error doctrine. *State v. Winfield*, 2006 UT 4, ¶ 1, 128 P.3d 1171; *see also Butterfield*, 2010 UT App 357, ¶ 28 (holding that "by passing the jury for cause, [appellants] invited any error in the court's denial of their motion for change of venue").

¶24 Here, MacNeill argues that a change of venue was necessary due to "the nature and the extent of the publicity surrounding this case." He maintains that "with all the pervasive media attention garnered in this case it was impossible for Utah County to empanel an unbiased jury." But at trial, he passed the jury panel for cause. By doing so, as the foregoing authorities make clear, he forfeited any claim of juror bias and with it his challenge to the court's earlier denial of his change-of-venue motion.

¶25 MacNeill argues that, even though his case proceeded to trial, "the *James* factors must still be taken into account by this Court as the factors provide a model for assessing the jurors that were seated in this case." (Citing *State v. James*, 767 P.2d 549, 552 (Utah 1989)). The *James* factors include the standing of both the accused and the victim in the community, the size of the community, the nature and gravity of the offense, and the nature and extent of any publicity. *Id.* But *James* was before the supreme

court on an interlocutory appeal and thus the "purpose of the *James* factors is to predict whether a fair and impartial jury can be selected in a community that has been exposed to publicity about a criminal case," *Butterfield*, 2010 UT App 357, ¶ 14, not to assess whether a fair and impartial jury was actually selected.

¶26 True, "the evaluative criteria established in *James* can, and often should, play a role in assessing . . . whether the defendant in fact was tried by a fair and impartial jury." *State v. Stubbs*, 2005 UT 65, ¶ 17, 123 P.3d 407. But the *James* factors do not control in a case that "has already been tried and decided by a jury." *Widdison*, 2001 UT 60, ¶ 38. "Where the alleged harm is a tainted jury in a trial that has already taken place, the question is not a mere likelihood of bias in the jury venire; it is actual bias on the part of the jurors who actually sat." *State v. Nielsen*, 2014 UT 10, ¶ 23, 326 P.3d 645. Because MacNeill passed the jury for cause and because he has not alleged any actual bias on the part of the jurors who actually sat, we hold that the trial court did not abuse its discretion in denying MacNeill's motion to change venue.

II. Ineffective Assistance of Counsel

¶27 MacNeill next contends that "trial counsel was ineffective for failing to object to inflammatory and prejudicial testimony and failing to preserve the issue for appeal."

¶28 "We review claims of ineffective assistance of counsel raised for the first time on appeal for correctness." *State v. Heywood*, 2015 UT App 191, ¶ 16, 357 P.3d 565 (citing *State v. Lucero*, 2014 UT 15, ¶ 11, 328 P.3d 841). To succeed on a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To overcome this presumption, a defendant must show that "there was *no conceivable tactical basis* for counsel's actions." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis in original) (citation and internal quotation marks omitted).

¶29     "The court 'give[s] trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them.'" *Id.* (alteration in original) (quoting *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996)). "The threshold question under *Strickland* is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *State v. Barela*, 2015 UT 22, ¶ 21, 349 P.3d 676. "[I]f it can be shown that 'after thorough investigation of law and facts relevant to plausible options' counsel made a 'strategic choice[],' then that choice is 'virtually unchallengeable.'" *State v. Larrabee*, 2013 UT 70, ¶ 19, 321 P.3d 1136 (second alteration in original) (quoting *Strickland*, 466 U.S. at 690–91).

¶30     MacNeill argues that Victim's testimony that she believed he had murdered her mother was "irrelevant to the case and extremely prejudicial" and that there was "no sound strategic reason" for defense counsel not to object. The State responds that defense counsel strategically "used [Victim's] belief to argue that she had a motive to falsely accuse [MacNeill] of sexually abusing her."

¶31     Defense counsel's trial theory was that Victim falsely accused MacNeill of sexual abuse because she believed he had killed her mother. Counsel introduced this theme in his opening statement, explaining to the jury that they would be responsible for weighing the credibility of the witnesses—including the "reasons that they may have, or ulterior motives that they may have to not testify accurately." He then recounted Victim's

relationship with MacNeill, beginning with the fact that Victim "immediately believed that her father had killed her mother." Counsel stuck to this strategy throughout trial. Defense counsel did not object when Victim testified that MacNeill murdered her mother. On cross-examination, defense counsel called attention to the fact that Victim was "comfortable accusing [her] father of murder but . . . [not] accusing him of sex abuse." And in closing, defense counsel argued, "The evidence that has been presented includes testimony of [Victim] and [Sister] primarily. . . . [Y]ou have the testimony of two people that obviously have a motive and strong interest to at least slant their testimony, if not misrepresent the truth. . . ." He also recounted Victim's testimony that MacNeill "had something to do with the death of [her] mother. . . . [Victim] said that as she was being escorted [from MacNeill's home], that she even screamed back about him in her opinion murdering [her] mother."

¶32   Counsel's strategy was reasonable. The prosecution framed the case in its opening statement as one of Victim's word against MacNeill's; when MacNeill opted not to testify, the case hung on Victim's credibility. So identifying a reason why Victim might falsely testify supported the defense strategy of challenging her credibility. Accordingly, counsel had at a minimum a conceivable tactical basis to allow Victim to testify that she believed MacNeill had murdered her mother: that belief offered a plausible motive for Victim to fabricate her testimony. On appeal, MacNeill offers no alternative basis on which Victim's credibility could have been successfully attacked.

¶33   MacNeill argues that under *Larrabee*, defense counsel's failure to object to "improper, inflammatory, and prejudicial" statements "was not a sound trial strategy." *Larrabee*, 2013 UT 70, ¶ 20 (internal quotation marks omitted). In *Larrabee*, defense counsel obtained a ruling barring the State from introducing evidence of a prior alleged assault. *Id.* ¶ 21. Despite this ruling, the prosecutor referred to those allegations in closing arguments

without objection from defense counsel. *Id.* The Utah Supreme Court held that defense counsel's failure to object to the very statements he had sought to exclude "was not a sound trial strategy." *Id.* ¶ 20.

¶34    That is not the case here. Defense counsel did not fail to exclude Victim's inflammatory accusation from trial. He affirmatively employed it as the centerpiece of a fabrication defense—a defense that was at a minimum constitutionally reasonable.[2]

¶35    Because there was a conceivable tactical basis for counsel's actions, his performance was not deficient and therefore not ineffective. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### III. Due Process Violations

¶36    MacNeill contends that his right to a speedy trial was violated. "Whether a defendant's right to a speedy trial has been violated presents a question of law, which we review for correctness." *State v. MacNeill*, 2012 UT App 263, ¶ 7, 286 P.3d 1278 (citation and internal quotation marks omitted).

---

2. MacNeill also points to a successful objection by defense counsel preventing potential testimony from a detective about the outcome of the murder trial. He argues that this ruling shows that there was no legitimate reason for not objecting to Victim's testimony. But Victim testified that she believed MacNeill murdered her mother. The detective would have testified that the jury convicted MacNeill of murder. While defense counsel asked jurors to question Victim's credibility and motivation, he might reasonably have preferred that they not be informed that her suspicions had been confirmed at MacNeill's murder trial.

¶37    MacNeill candidly acknowledges that he is asking us to "revisit his speedy trial claim," which we rejected on interlocutory appeal as inadequately briefed.[3] *See id.* ¶¶ 23–27. MacNeill maintains that he has now adequately briefed this claim. The State responds that this claim is again inadequately briefed and, in any event, barred by the law-of-the-case doctrine. We agree with the State.

¶38    "Simply stated, under the law-of-the-case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (citation and internal quotation marks omitted). The law-of-the-case doctrine comprises two branches. In the first, "[w]hile a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision." *Id.* ¶ 27. In the second, often called the mandate rule, "a prior decision of a district court becomes mandatory after an appeal and remand." *Id.* ¶ 28. "The mandate rule, unlike the law of the case before a remand, binds both the district court and the parties to honor the mandate of the appellate court." *Id.* As relevant here, "[t]he mandate is also binding on the appellate court should the case return on appeal after remand." *Id.; see also Rawlings v. Rawlings*, 2015 UT 85, ¶ 26, 358 P.3d 1103.

¶39    In the interlocutory appeal, we "affirm[ed] the ruling[] before us on appeal." *MacNeill*, 2012 UT App 263, ¶ 29. And because MacNeill "failed to discuss the length of and reason for each circumstance of delay," we "decline[d] to give [his] speedy

---

3. MacNeill "believes his trial counsel failed to properly brief the issue and failed to adequately address his Sixth Amendment arguments" in his interlocutory appeal. But MacNeill does not present this failure as an ineffective assistance of counsel claim.

trial argument plenary consideration." *Id.* ¶ 25. In effect, MacNeill now attempts to supplement the briefing submitted in his earlier appeal. The mandate rule bars such attempts. *See IHC Health Services, Inc.*, 2008 UT 73, ¶ 28. We thus conclude that, subject to the applicability of some exception, the mandate rule bars MacNeill's speedy trial claim.

¶40    MacNeill asserts that an exception to the law-of-the-case doctrine applies here. Our courts recognize three exceptions to the law-of-the-case doctrine: "(1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Id.* ¶ 34 (citation and internal quotation marks omitted). MacNeill claims that the second exception applies.

¶41    MacNeill maintains that after the interlocutory appeal, defense counsel "discovered that there was missing evidence." However, the "missing evidence" that MacNeill describes relates to Victim's credibility, not to his speedy trial claim. Accordingly, this purportedly new evidence presents no reason for this court to revisit its decision on interlocutory appeal.[4] Furthermore, MacNeill does not support his description of this evidence with citations to the record. "An appellate court's review is . . . limited to the evidence contained in the record on appeal." *State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279 (omission in original) (citation and internal quotation marks omitted). Hence, on appeal we accord no weight to assertions of fact not supported by citations to the record. For this reason, an adequately briefed

---

4. We would view the matter differently if MacNeill claimed significant delay occurred after his interlocutory appeal and before trial. Such a delay might well satisfy the requirement for new evidence in the context of his speedy trial claim.

argument must "contain the contentions and reasons of the appellant with respect to the issues presented . . . *with citations to the authorities, statutes, and parts of the record relied on*." Utah R. App. P. 24(a)(9) (emphasis added). An inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error. *See Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 37 n.5, 297 P.3d 38. Accordingly, MacNeill has not demonstrated that he satisfies the second exception to the appellate mandate rule.[5]

¶42    We similarly conclude that MacNeill's due process claim regarding the destruction of the recording of Victim's September 11, 2007 interview is inadequately briefed. Our supreme court established the test for a destruction-of-evidence due process claim in *State v. Tiedemann*. 2007 UT 49, ¶¶ 39–46, 162 P.3d 1106. MacNeill neither articulates nor analyzes his claim under that standard. *See* Utah R. App. P. 24(a)(9). MacNeill instead argues that "[t]he State has the duty to give defense counsel any evidence with a potential exculpatory purpose" and that the failure to do so violated his due process rights. This claim appears in a single sentence, in a footnote, bereft of analysis or citation to the record. *See id.* "[W]e are resolute in our refusal to take up constitutional issues which have not been properly

---

5. Even if we were to revisit the issue, we would be constrained to affirm on the same ground on which we affirmed in the interlocutory appeal: MacNeill has again "failed to discuss the length of and reason for each circumstance of delay." *See State v. MacNeill*, 2012 UT App 263, ¶ 25, 286 P.3d 1278. And, in any event, as we noted in our previous decision, "[t]he intervening time between the State's good faith dismissal and subsequent refiling of charges does not implicate a defendant's right to a speedy trial." *Id.* ¶ 24 (alteration in original) (citation and internal quotation marks omitted).

preserved, framed and briefed." *Brigham City v. Stuart*, 2005 UT 13, ¶ 14, 122 P.3d 506, *rev'd on other grounds*, 547 U.S. 398 (2006).

## CONCLUSION

¶43    The judgment of the trial court is affirmed.

———————