*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 21**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

SHON BRIAN BLAKE,
*Appellant.*

No. 20230435
Heard April 7, 2025
Filed July 25, 2025

On Certification from the Court of Appeals

Fourth District Court, Provo
The Honorable Kraig Powell
No. 191400656

Attorneys:

Derek E. Brown, Att'y Gen., Daniel L. Day, Asst. Solic. Gen., Salt Lake City, Stephen Jones, Provo, for appellee

Dallas B. Young, Jennifer L. Foresta, Douglas Thompson, Provo, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, JUSTICE HAGEN, and JUDGE LUTHY joined.

Having recused herself, JUSTICE POHLMAN does not participate herein; COURT OF APPEALS JUDGE JOHN D. LUTHY sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

### INTRODUCTION

¶1 Shon Brian Blake shot a man twice in the arm during an argument. The victim required medical treatment to remove a bullet and repair his arm. The Utah Office for Victims of Crime

(UOVC) paid those medical expenses. The State charged Blake with several crimes, and Blake pled guilty. As part of his sentence, the State asked for a restitution order to reimburse UOVC for the victim's medical expenses.

¶2 The district court entered a restitution order requiring Blake to repay UOVC for part of the medical expenses. The court of appeals reversed the district court's restitution order, concluding the order was not supported by sufficient evidence.[1] Neither the opinion nor the remittitur that accompanied it used the word remand or otherwise stated whether additional proceedings were required in the district court. When the case returned to the district court, the court determined, over Blake's objection, that it had the authority to hold a second restitution hearing. At the conclusion of that hearing, the district court entered a new restitution order.

¶3 Blake appealed again, asserting that the district court could not enter a new restitution order and that the new order was not supported by sufficient evidence. The court of appeals certified the appeal to us to decide whether the district court was prohibited under the law of the case doctrine from holding a second restitution hearing given that (1) the court of appeals reversed the restitution order for insufficient evidence and (2) that court did not expressly remand the case. We conclude that the district court was not prohibited from holding a second restitution hearing based on either of these grounds or the other preclusion doctrines Blake presents to us. We further conclude that the new restitution order was supported by sufficient evidence. We affirm the district court's second restitution order.

## BACKGROUND

¶4 One evening in February 2019, a rock came through a woman's third-story apartment window. Suspecting that her ex-boyfriend, Blake, threw the rock, she and her new boyfriend called and texted Blake and asked him to come over. When the couple stepped outside, they noticed the new tires on the girlfriend's car were flat.

¶5 When Blake arrived, the couple accused him of throwing the rock and deflating the tires. During the argument that followed, Blake briefly pulled out a gun from his pants, then put it away. As the argument continued, Blake pulled out the gun again, pointed it

---

[1] *State v. Blake*, 2022 UT App 104, ¶ 1, 517 P.3d 414.

at the woman's car, and fired it five times. He then turned and walked away, but her new boyfriend followed him. Blake turned again and fired the gun at the new boyfriend three times, hitting him twice in the arm.

¶6    When the police arrived, officers arranged for the injured boyfriend to go to the hospital for medical treatment. Medical providers removed a bullet and repaired his damaged arm. Those medical expenses totaled $36,701.56. Because the boyfriend was the victim of a crime, UOVC paid those expenses.

¶7    Blake was later apprehended by the police, and the State charged him with several offenses. He pled guilty pursuant to a plea agreement.

¶8    The district court entered a sentence that included $500 of restitution for damage to the girlfriend's car, but the court left the restitution portion of the sentence open for one year, as the restitution statute allowed, for the State to submit other expenses.[2] Eight months later, the State submitted evidence of the injured boyfriend's medical expenses and moved to amend the restitution order to include those damages. After a restitution proceeding, which the district court later characterized as a "quasi-hearing" and where no testimony was provided, the court entered a restitution order based on a discussion that occurred with the attorneys at that proceeding and a two-page redacted list of payments. Applying the two-part restitution structure that was required at that time, the court set complete restitution at $36,701.56, and it ordered a lesser

---

[2] *See* UTAH CODE § 77-38a-302(5)(d) (2019) ("The prosecuting agency shall submit all requests for complete restitution and court-ordered restitution to the court at the time of sentencing if feasible, otherwise within one year after sentencing."). The legislature amended the restitution statutes in 2021 to extend the time for seeking restitution. *See* Criminal Justice Modifications, H.B. 260, 2021 Leg., Gen. Sess. (Utah 2021). But the statute in effect at the time of sentencing governs. *See State v. Clark*, 2011 UT 23, ¶¶ 12–14, 251 P.3d 829 (holding that "[t]he law governing [a] procedural occurrence is . . . the law in effect at the time of the procedural act").

amount of court-ordered restitution, $17,848.50.[3] Blake appealed that decision.

¶9    The court of appeals reversed the restitution order, concluding that while there was no question that the shooting caused some medical expenses, the evidence provided by the State was insufficient to establish causation between the shooting and the medical expenses requested.[4] The court concluded that the limited documentation of the medical expenses on the redacted list was generic and conclusory.[5] It further determined that without either providing more detail or making impermissible assumptions about UOVC's process when reviewing medical expenses, the evidence of causation was limited to the dates of the services in relation to the date of the shooting.[6] The court filed its opinion and a remittitur that sent the matter back to the district court. Neither document included an express directive for additional district court proceedings.

¶10 The district court set a review hearing and allowed the State an opportunity to file a motion to amend its restitution request. Blake opposed the renewed request for restitution. He asked that the court of appeals' opinion become the final order on

---

[3] The restitution statutes no longer distinguish between complete restitution and court-ordered restitution. *Compare* UTAH CODE § 77-38b-205(1) (2025), *with* UTAH CODE § 77-38a-302(2) (2019) (defining "complete restitution" and "court-ordered restitution"). The distinctions between the two types of restitution played a substantive role in our jurisprudence in restitution matters, and that jurisprudence provides context for our analysis under the older restitution statute. *See State v. Ogden*, 2018 UT 8, ¶¶ 27–28, 416 P.3d 1132 (comparing "complete restitution" — the total amount of the victim's pecuniary damages — with "court-ordered" restitution which could be a lower amount after the court considered the impact the amount of restitution would have on the defendant); *see also State v. Laycock*, 2009 UT 53, ¶ 20, 214 P.3d 104 ("We find the plain language of this subsection to be a clear directive that district courts are to make two separate restitution determinations, one for complete restitution and a second for court-ordered restitution.").

[4] *State v. Blake*, 2022 UT App 104, ¶¶ 12, 15, 517 P.3d 414.

[5] *Id.* ¶¶ 12–14.

[6] *Id.* ¶ 13.

restitution, without allowing for a new restitution order. The district court determined it still had jurisdiction to consider the amended restitution request and later held an evidentiary hearing. After that hearing, the district court entered a new restitution order, again finding complete restitution to be $36,701.56 but ordering $18,350.78 in court-ordered restitution.

¶11 The district court stayed that new restitution order pending the outcome of any appeals. Blake timely appealed the second restitution order. The court of appeals certified this matter to us for our review.[7]

### ISSUES AND STANDARDS OF REVIEW

¶12 Blake presents four issues on appeal. He first asks us to review whether the doctrine of res judicata barred the district court from hearing new evidence in a second restitution hearing. Second, he asks us to review whether the mandate rule should have prevented the second hearing. His third issue is whether the State's request for a second restitution hearing was untimely under the restitution statute. We review these three issues for correctness.[8]

¶13 As his final issue, Blake asserts that the new restitution order is not supported by sufficient evidence. The general standard reflected in our precedent when reviewing restitution orders is that we will not disturb a district court's restitution determination unless the court exceeds the authority prescribed by law or abuses its discretion.[9] But a closer examination reveals a more variable standard of review depending on whether the issue is legal or factual.[10] The court of appeals aptly recognizes the same, namely

---

[7] *See generally* UTAH CODE § 78A-4-103(4); UTAH R. APP. P. 43.

[8] *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 7, 393 P.3d 285 (reviewing whether res judicata barred a civil action for correctness); *Brady v. Park*, 2019 UT 16, ¶ 30, 445 P.3d 395 (reviewing a district court's holdings regarding the mandate rule for correctness); *State v. Lovell*, 2005 UT 31, ¶ 13, 114 P.3d 575 (reviewing an issue of timeliness for correctness).

[9] *State v. Ogden*, 2018 UT 8, ¶ 25, 416 P.3d 1132; *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104.

[10] *Compare State v. Laycock*, 2009 UT 53, ¶¶ 20–24, 214 P.3d 104 (evaluating legal questions about language used in the restitution statute), *with State v. Weeks*, 2002 UT 98, ¶¶ 20–21, 61 P.3d 1000

(continued . . .)

that we review legal determinations associated with a restitution analysis for correctness and review sufficiency of the evidence challenges for clear error.[11] We agree.[12] When an appellant challenges a restitution order for insufficient evidence, we review whether the clear weight of the evidence contradicts the district court's ruling.[13] Under clear error review, disputes in the evidence are resolved in the light most favorable to the district court's determination.[14]

## ANALYSIS

¶14 Utah's Crime Victims Restitution Act requires district courts to determine restitution for any pecuniary damages proximately caused by a defendant's criminal conduct.[15] If UOVC pays for a victim's expenses caused by a crime, then the defendant pays restitution to UOVC for those expenses.[16]

¶15 Blake's principal dispute is whether the reversal of the first restitution order by the court of appeals, without an express

---

(evaluating the factual question of whether a restitution amount was supported by sufficient evidence).

[11] *State v. Murray*, 2023 UT App 52, ¶ 21, 530 P.3d 982.

[12] *See State v. Levin*, 2006 UT 50, ¶¶ 19–24, 144 P.3d 1096 (discussing standards of review and the spectrum of deference in relation to the types of issues—legal, factual, and mixed—presented on appeal).

[13] *Murray*, 2023 UT App 52, ¶ 21 (citing *State v. Chadwick*, 2021 UT App 40, ¶ 6, 486 P.3d 90); *see Ogden*, 2018 UT 8, ¶¶ 53–54 (requiring evidence supporting a restitution order be "firmly established" in the record).

[14] *State v. Perea*, 2013 UT 68, ¶ 32, 322 P.3d 624.

[15] UTAH CODE § 77-38a-302(1) (2019); *see also State v. Ogden*, 2018 UT 8, ¶¶ 29–48, 416 P.3d 1132 (determining the legislature intended to employ the proximate cause standard to find a defendant's "criminal activity . . . has resulted in pecuniary damages" (cleaned up)).

[16] *See* UTAH CODE § 77-38a-102(14)(a) (2019) ("'Victim' means any person or entity, including the Utah Office for Victims of Crime, who the court determines has suffered pecuniary damages as a result of the defendant's criminal activities.").

remand instruction, allowed a second restitution hearing and the new restitution order.

¶16 As a preliminary matter, we briefly address whether reversal based on sufficiency of the evidence, which the court of appeals noted in its certification order, implicates double jeopardy. Restitution orders are unique components of criminal sentencing.[17] The Double Jeopardy Clauses of the U.S. and Utah Constitutions protect defendants from multiple prosecutions or sentences for the same offense, and Utah Code sections 76-1-402 and -403 can extend those protections for different offenses during the same criminal episode.[18] Where insufficient evidence is the basis for a reversal of a conviction, the Double Jeopardy Clauses might be a legal barrier prohibiting a second trial based on evidence the prosecutor could have presented at the first trial.[19] But where the insufficiency of the evidence requires resentencing, double jeopardy might not bar additional proceedings, and we have articulated some of the legal

---

[17] *State v. Mooers*, 2017 UT 36, ¶ 7, 424 P.3d 1 ("Restitution orders are a unique animal, existing at the convergence of the civil and criminal worlds . . . .").

[18] U.S. CONST. amend. V; UTAH CONST. art. I, § 12; UTAH CODE §§ 76-1-402 to -403; *State v. Ririe*, 2015 UT 37, ¶ 6, 345 P.3d 1261 ("The Double Jeopardy Clause of the U.S. Constitution insulates a defendant from multiple prosecutions or multiple sentences for the same offense. The single criminal episode statute, Utah Code [section] 76-1-403, takes the matter a step further. It adopts a species of res judicata or claim preclusion for criminal cases—barring prosecutions for *different offenses* committed as part of a single criminal episode and otherwise meeting the terms of the statute." (cleaned up)).

[19] *Compare State v. Steed*, 2014 UT 16, ¶ 55, 325 P.3d 87 ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (quoting *Burks v. United States*, 437 U.S. 1, 11 (1978)), *with State v. Hummel*, 2017 UT 19, ¶ 65 n.23, 393 P.3d 314 ("In rejecting Hummel's approach we also avoid another line-drawing problem of constitutional magnitude—whether reversal on the basis of insufficient evidence of one [or] more theories of a crime bars retrial under the Double Jeopardy Clause. This is an important, complex question without a clear answer.")

issues to analyze in such instances.[20] Moreover, we established in *Monson v. Carver* that restitution orders, at least when ordered by the Utah Board of Pardons and Parole, are remedial civil penalties, not criminal punishments for double jeopardy purposes.[21]

¶17 Neither party relies on the more complex principles of double jeopardy as a basis to decide the primary issue in this appeal, and we focus instead on their arguments as they were presented. Blake relies on three doctrines of preclusion to support his argument—res judicata, law of the case, and timeliness. He also contests the sufficiency of the evidence to support the new restitution order. We address each issue in turn.

## I. THE DOCTRINE OF RES JUDICATA DOES NOT APPLY WITHIN THE SAME ACTION

¶18 The doctrine of res judicata prohibits relitigation of claims and issues that were litigated, or could have been litigated, in a prior action.[22] Res judicata has two branches: issue preclusion and claim preclusion.[23] Blake asserts that the claim preclusion branch applies here. Claim preclusion has three elements: (1) both cases involve the same parties or people in privity with the same parties; (2) the claim was presented in the first case or could and should have been raised in that first action; and (3) the first case resulted in a final judgment on the merits.[24]

¶19 Blake invites us to rely on our discussion in *State v. Garner*, applying the doctrine of res judicata in a criminal case.[25] But we later clarified in *IHC Health Services, Inc. v. D & K Management, Inc.*,

---

[20] *State v. Prion*, 2012 UT 15, ¶¶ 30–62, 274 P.3d 919; *see also State v. Rodrigues*, 2009 UT 62, ¶¶ 36–39, 218 P.3d 610 (discussing the role of legitimate expectations of finality when evaluating the application of double jeopardy to restitution orders revised after a remand).

[21] 928 P.2d 1017, 1027 (Utah 1996); *see also Rodrigues*, 2009 UT 62, ¶¶ 37–39 (declining to extend double jeopardy protection to a restitution order that was amended to correct a clerical error).

[22] *State v. Garner*, 2005 UT 6, ¶ 8, 106 P.3d 729.

[23] *Gressman v. State*, 2013 UT 63, ¶ 37, 323 P.3d 998.

[24] *Garner*, 2005 UT 6, ¶ 9.

[25] *Id.* ¶¶ 8–10.

that our discussion of res judicata in *Garner* erroneously conflated various related preclusion doctrines.[26] We expressly clarified in *IHC* that res judicata does *not* apply to claims or issues relitigated in the same case.[27] Instead, the law of the case doctrine is the appropriate doctrine to apply within the same case.[28]

¶20 Since Blake's new restitution order arose in the same criminal prosecution as the original restitution order, we decline to evaluate the doctrine of res judicata and look instead at his second issue, which regards the law of the case.

## II. AN APPELLATE DECISION MAY MANDATE THAT A TRIAL COURT ADDRESS MATTERS THAT WERE REVERSED

¶21 Blake asserts that the mandate rule precluded the district court from revisiting its first restitution order. The mandate rule is one of several rules inside the larger umbrella of the law of the case doctrine. While that umbrella covers distinct types of legal problems, each with a separate type of analysis, the doctrine generally provides that, prior to an appeal, parties are bound by the decisions of the trial court made within that case, although the trial court may have discretion to change those decisions until it enters its final judgment.[29]

¶22 The "mandate rule," on the other hand, applies after a case has been appealed.[30] Once an appellate court issues its decision, both the appellate court's pronouncements on legal issues and the prior decisions of the trial court generally become mandatory,

---

[26] 2008 UT 73, ¶ 26 n.20, 196 P.3d 588 (expressly overruling the interchangeable use of the concepts of res judicata and law of the case in *Garner*).

[27] *Id.*; *see also In re Discipline of Rasmussen*, 2013 UT 14, ¶ 17, 299 P.3d 1050 ("Res judicata and its companion, collateral estoppel, do not operate within a single case. They are used to describe the binding effect of a decision in a prior case on a second case." (cleaned up)).

[28] *IHC Health Servs.*, 2008 UT 73, ¶ 26.

[29] *Brady v. Park*, 2019 UT 16, ¶ 44, 445 P.3d 395; *IHC Health Servs.*, 2008 UT 73, ¶ 27.

[30] *IHC Health Servs.*, 2008 UT 73, ¶ 28.

although the mandate rule is not inflexible.[31] The purpose of the rule is to protect against reargument of settled issues and to assure adherence of the trial courts to appellate decisions.[32]

¶23 Blake relies on the court of appeals' decision in *State v. MacNeill* to assert that the mandate rule bars subsequent evidentiary hearings, but we conclude that such reliance is misplaced.[33] In *MacNeill*, the court of appeals declined to consider a speedy trial issue in an interlocutory appeal because the issue was inadequately briefed.[34] The case was remanded to the trial court and then appealed again.[35] In that next appeal, the appellant attempted to brief the speedy trial issue again and asserted it could be considered through an exception to the mandate rule because new evidence had become available.[36] The court of appeals determined that the exception to the mandate rule did not apply because the purported new evidence was for a different issue, not the speedy trial issue, and the briefing was still inadequate.[37]

---

[31] *Brady*, 2019 UT 16, ¶¶ 45, 78; *Gildea v. Guardian Title Co. of Utah*, 2001 UT 75, ¶ 9, 31 P.3d 543 (discussing exceptions to the mandate rule to avoid "unjust results or unwise precedent").

[32] *Brady*, 2019 UT 16, ¶ 45; *see also Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 13, 218 P.3d 583 ("The mandate rule is justified. Without it, considerable inefficiencies would result if parties were free to relitigate after remand issues decided in an earlier ruling of this court." (cleaned up)); *Thurston v. Box Elder Cnty.*, 892 P.2d 1034, 1038 (Utah 1995) ("[The mandate rule] serves the dual purpose of protecting against the reargument of settled issues and of assuring adherence of lower courts to the decisions of higher courts.").

[33] *See* 2016 UT App 177, ¶¶ 37–39, 380 P.3d 60.

[34] *Id.* ¶ 39.

[35] *Id.* ¶¶ 8, 37.

[36] *Id.* ¶ 37–41; *IHC Health Servs.*, 2008 UT 73, ¶ 34 ("There are three exceptional circumstances in which the law of the case doctrine does not apply: (1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." (cleaned up)).

[37] *MacNeill*, 2016 UT App 177, ¶ 41.

¶24 The case before us is much different. Here, no party sought any exception to the mandate rule before the district court. Rather, after the first appeal, the district court was left with a vacated restitution order, but it was required by statute to provide restitution as part of sentencing. So the mandate rule is not a square fit for this case. Instead, the unique context of restitution is central to resolving whether the district court had the authority to hold a second evidentiary hearing.[38]

¶25 Before moving on to that central issue, we briefly acknowledge the State's argument that applying the mandate rule would prohibit the district court from addressing the error the appellate court identified. The mandate rule prohibits the district court from reconsidering legal issues after an appeal,[39] which, according to the State, means a court may reconsider factual issues. The law may be more nuanced than that. While not cited to by either party, there is a developed body of law in federal courts prescribing how to evaluate alleged violations of the mandate rule, by looking first at whether an appellate court's directives were general or limited, which then impacts whether the trial court can approach additional proceedings de novo or within prescribed limits.[40] We are not invited to, nor do we need to, consider or adopt that body of law today.

¶26 Our existing precedent about reversals without remand instructions, coupled with the unique nature of restitution proceedings, resolves this appeal on narrower grounds, which we address with Blake's third issue.

---

[38] *See infra* part III.

[39] *Brady*, 2019 UT 16, ¶¶ 45, 78; *Thurston*, 892 P.2d at 1037–38.

[40] *See* 18B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 4478.3 (3d ed. May 2025 update); *Monroe v. FTS USA, LLC*, 17 F.4th 664, 669 (6th Cir. 2021). Under this body of law, if a remand has specific instructions, the scope of what the trial court can address must stay within those boundaries; if there are no specific instructions, it is a general remand, and the district court can consider all matters de novo as long as the court "remains consistent with the appellate court's opinion." *See id.*

III. WITHOUT AN EXPRESS REMAND, A TRIAL COURT CONSIDERS THE CONTEXT OF THE PRIOR DECISION TO DETERMINE FURTHER PROCEEDINGS

¶27 Blake contests whether the second request to modify restitution was timely, and in doing so, he illuminates the central issue in the case—whether the district court can hold a second restitution hearing after an appellate court reverses a restitution order but remains silent about remand proceedings. Our precedent establishes that, even without express instructions, further proceedings can follow a reversal unless the reversal included express language to the contrary. These further proceedings depend on the context of the case, which here includes the unique nature of restitution. We first evaluate our precedent on reversals and the distinctiveness of restitution proceedings and then address the statutory timeliness issue Blake asserts.

*A. Precedent Establishes What Trial Courts Must Consider Following Reversals Without Remand Instructions*

¶28 If the court of appeals had included the word "remand" in its opinion, it would be clear that the district court needed to have a new restitution hearing and enter a new restitution order.[41] Sometimes in restitution cases the appellate courts reverse and remand, often including instructions with the remand.[42] But at times appellate courts have entered opinions reversing a trial court's decision without using the word remand or otherwise instructing the trial court on what to do next.[43]

---

[41] *Compare State v. Blake*, 2022 UT App 104, ¶ 15, 517 P.3d 414 (reversing a restitution order), *with State v. Sevastopoulos*, 2021 UT 70, ¶¶ 20–21, 502 P.3d 290 (remanding for the district court to enter a new restitution order).

[42] *See, e.g.*, *State v. Ogden*, 2018 UT 8, ¶ 66, 416 P.3d 1132 (directing the trial court on remand to ensure the restitution calculation rested on non-speculative evidence); *State v. Mooers*, 2018 UT App 74, ¶ 17, 424 P.3d 1126 (vacating a restitution order and remanding to the trial court to enter an order to include only certain pecuniary losses).

[43] *See, e.g.*, *Kennecott Corp. v. State Tax Comm'n of Utah*, 862 P.2d 1348, 1353 (Utah 1993); *Cobb v. Snow* (*Cobb II*), 380 P.2d 457, 457 (Utah 1963).

¶29 Blake's appeal allows us to reiterate how, under our precedent, we approach reversals without instructions. A reversal of a trial court order invalidates that order but does not prohibit further proceedings *unless* the reversing court expressly states otherwise.[44] In *State v. Cobb* (*Cobb I*), a defendant appealed his conviction, and this court reversed the decision of the trial court.[45] He then appealed a second time, asserting that a reversal meant he was entitled to an "absolute discharge" of the matter.[46] Our decision in *Cobb II* declined to adopt that approach.[47] Nevertheless, Blake asserts that is the approach that should control this case: in other words, that the remittitur after the reversal conferred jurisdiction to the district court only to vacate the first restitution order. But that is not the law.

¶30 Reversal usually requires further action by the trial court.[48] Though an appellate court has authority to fully and finally dispose of a matter, it "will only do so expressly, noting specifically that no further action is required by the trial court."[49] "In the absence of [an] express mandate, it is both necessary and proper to consider the entire context of the prior decision to determine what further proceedings the interests of justice require."[50]

### B. Restitution Orders Are Unique and Are Required Parts of the Sentencing Process

¶31 The distinct characteristics of restitution are part of the "entire context" the district court had to consider here. "Restitution orders are a unique animal, existing at the convergence of the civil

---

[44] *Chase Manhattan Bank v. Principal Funding Corp.*, 2004 UT 9, ¶ 12, 89 P.3d 109; *Cobb II*, 380 P.2d at 457 ("It is well established that where the defendant has complained that errors *vitiate* the judgment and it is nullified at his request, he cannot also claim that there *is* a judgment which precludes further proceedings against him.").

[45] 374 P.2d 844, 845 (Utah 1962).

[46] *Cobb II*, 380 P.2d at 457.

[47] *Id.*

[48] *Chase Manhattan Bank*, 2004 UT 9, ¶ 12; *Cobb II*, 380 P.2d at 457.

[49] *Chase Manhattan Bank*, 2004 UT 9, ¶ 12.

[50] *Cobb II*, 380 P.2d at 457.

and criminal worlds . . . ."[51] While restitution is part of the criminal sentencing process, a restitution order becomes a civil judgment,[52] which removes it from the realm of double jeopardy and gives it a special timeline for appeal, independent of the rest of a criminal case.[53]

¶32   As part of the criminal sentencing process, restitution has three purposes.[54] One is remedial, to compensate the victim.[55] Another is to rehabilitate the defendant.[56] The third is to deter the defendant (and others) from future illegal behavior.[57]

¶33 To serve the compensatory purpose, the restitution proceeding aims to determine the victim's pecuniary damages.[58] It is, by design, a somewhat informal proceeding. The trial courts are required to determine the pecuniary damages based on the best information available, but without the benefits of discovery that exist in civil litigation.[59] The rules of evidence, including restrictions on the use of hearsay, do not apply at restitution proceedings.[60] A restitution order "may be based on approximations" and "some degree of uncertainty," as long as the order is based on "reasonable assumptions or projections" with

---

[51] *State v. Mooers*, 2017 UT 36, ¶ 7, 424 P.3d 1.

[52] UTAH CODE § 77-38a-401(1), (2) (2019); *State v. Laycock*, 2009 UT 53, ¶ 32, 214 P.3d 104.

[53] *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996) (establishing that restitution orders are not subject to double jeopardy); *Mooers*, 2017 UT 36, ¶¶ 13–17 (describing the special appeal deadlines for restitution orders).

[54] *Laycock*, 2009 UT 53, ¶ 18 (discussing the multiple purposes of restitution).

[55] *Monson*, 928 P.2d at 1027–28 (evaluating the remedial purpose of restitution).

[56] *Laycock*, 2009 UT 53, ¶ 18.

[57] *Id.*

[58] *See* UTAH CODE § 77-38a-302 (2019); *Laycock*, 2009 UT 53, ¶ 18 & n.1.

[59] *See Laycock*, 2009 UT 53, ¶ 23.

[60] *State v. Weeks*, 2002 UT 98, ¶ 16, 61 P.3d 1000.

some indicia of reliability, rather than purely speculative or ballpark figures.[61]

¶34 We have endorsed this limited evidentiary structure for restitution in part because of the careful balancing trial courts conduct at sentencing.[62] We have also acknowledged that this limited evidentiary structure is well suited for simple restitution cases, where the victim's losses are "simple and clear cut," but that the structure is less well suited to cases where there are difficult issues of causation or a need to determine future damages.[63]

¶35 However tempting it may be to focus on the compensatory purpose of restitution, we are unable to overlook its two noncompensatory purposes—rehabilitation and deterrence. We noted in *State v. Laycock* that "[r]estitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused."[64] We went on to note that "the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine."[65]

¶36 In short, determining the compensation amount is only one part of the restitution component of sentencing.[66] And restitution is only one part of the trial court's more complex balancing process at sentencing.[67]

---

[61] *Ogden*, 2018 UT 8, ¶¶ 52–53 (cleaned up).

[62] *Weeks*, 2002 UT 98, ¶ 17 ("There is wisdom in not applying the evidentiary rules to restitution hearings. Specifically, at the time of sentencing, a judge balances a number of different considerations and needs flexibility in issuing punishment. . . . The need for imposing the same evidentiary strictures required in a full-blown trial is therefore diminished because the sentencing judge may have imposed the restitution amount in place of a greater fine or incarceration term.").

[63] *Ogden*, 2018 UT 8, ¶ 27 n.5.

[64] *Laycock*, 2009 UT 53, ¶ 18 (cleaned up).

[65] *Id.* (cleaned up).

[66] *Id.*

[67] *Id.*; *Weeks*, 2002 UT 98, ¶ 17.

*C. A Second Restitution Order Was Both Timely and Necessary to Complete the Sentencing Process*

¶37 Against that backdrop of the unique nature of restitution—and its multiple purposes in the sentencing realm—we evaluate the procedural posture of this case at the time the court of appeals reversed the original restitution order. By statute, the district court was required to order restitution to complete the sentencing process—"in addition to any other sentence . . . the court shall order that the defendant make restitution to victims of crime . . . ."[68] "Shall" is presumed to indicate a mandatory act,[69] and no party asserts that presumption does not apply. Had the district court declined to re-evaluate restitution here, where restitution was requested, it would have risked an incomplete sentence, contrary to that legislative mandate.

¶38 The district court concluded that once a decision is reversed, it is as if that decision never existed and the parties are in the same position as if that decision never occurred.[70] Once the district court's restitution order was reversed, that court was required to "proceed to a determination of the case . . . as if no such previous decision by it had been rendered."[71] When the court of appeals reversed the first restitution order, the district court was left with a newly-unresolved motion by the State for restitution, as if the first restitution order had never been entered. It was also left with an incomplete sentence because the restitution component of sentencing was no longer in effect. This leads us to consider Blake's assertion that the request for restitution after the first appeal was untimely.

¶39 The State's initial motion for restitution was timely filed within the statutory one-year period following sentencing.[72] Both

---

[68] UTAH CODE § 77-38a-302(1) (2019).

[69] *Bd. of Educ. of Granite Sch. Dist. v. Salt Lake Cnty.*, 659 P.2d 1030, 1035 (Utah 1983).

[70] *Phebus v. Dunford*, 198 P.2d 973, 974 (Utah 1948) ("A reversal of a judgment or decision of a lower court . . . places the case in the position it was before the lower court rendered that judgment or decision . . . .").

[71] *Id.*

[72] *See* UTAH CODE § 77-38a-302(5)(d)(i) (2019).

parties agree that "once a prosecuting entity submits a timely request for restitution, the sentencing court maintains jurisdiction until the timely restitution request is finally resolved." With that timely restitution request still pending—or perhaps more accurately stated, reverted to a pending request after the court of appeals' decision—the State moved to amend the restitution order. As noted above, the court needed to resolve that motion to complete Blake's sentence, and it appropriately held a second hearing to do so. We find no error in the court's decision to hold a hearing and enter a new order.

## IV. THE TESTIMONY AT THE SECOND RESTITUTION HEARING PROVIDED SUFFICIENT EVIDENCE OF THE RESTITUTION AMOUNT

¶40 Blake also asserts the new restitution order was not supported by substantial evidence. Unlike the previous three issues that we reviewed for correctness, we review the record to determine whether the clear weight of the evidence contradicts the district court's ruling.[73] A district court abuses its discretion if "no reasonable person would take the view adopted" by that court.[74]

¶41 Blake correctly states that the criminal conduct must proximately cause the pecuniary damages ordered in restitution.[75] He does not contest that firing a gun at the victim caused the victim's injuries. Instead, he disputes whether the evidence was sufficient to show that the medical expenses were reasonable and necessary to treat those injuries. He points in large part to civil tort cases where expert testimony is used to establish medical expenses.

¶42 We have looked at the quantum of proof required and the lower evidentiary standards for restitution cases in the past. A restitution award must have a sufficient evidentiary basis, but it is "by nature an inexact science."[76] Some degree of uncertainty in the

---

[73] *State v. Ogden*, 2018 UT 8, ¶¶ 53–54, 416 P.3d 1132 (requiring restitution expenses to be "firmly established" in the record); *State v. Murray*, 2023 UT App 52, ¶ 21, 530 P.3d 982 (requiring a party challenging the sufficiency of the evidence supporting a restitution order to "demonstrate that the clear weight of the evidence contradicts the court's ruling").

[74] *State v. Maestas*, 2012 UT 46, ¶ 36, 299 P.3d 892 (cleaned up).

[75] *Ogden*, 2018 UT 8, ¶ 48.

[76] *Id.* ¶ 53 (cleaned up).

evidence can still sustain the amount of compensation due to a victim, but purely speculative calculations or ballpark amounts are insufficient.[77]

¶43 Here, the district court accepted into evidence the same two-page document listing the medical expenses that it accepted at the first restitution hearing, but this time that exhibit was unredacted. It also accepted additional, more detailed records that provided billing codes, provider information, and notes about the various diagnoses and procedures. The court also accepted an updated declaration from a UOVC witness regarding those materials. Then, unlike in the first restitution hearing—which the district court later characterized as a "quasi-hearing" rather than an evidentiary hearing—it heard testimony from a UOVC representative explaining the expenses listed in the exhibits. While Blake asserts some of that testimony was insufficient, primarily related to specific billing codes in the statements, the witness did testify about the nature of care provided, the procedures, the amounts billed for the victim's medical care, discounts applied, and his work confirming that the billing codes aligned with treatment for the gunshot wounds.

¶44 After reviewing the hearing transcript and district court findings, we conclude that the second restitution order is supported by sufficient evidence.

## CONCLUSION

¶45 We appreciate the challenges that arise when an appellate court does not include express instructions about what is to follow a reversal. But unless the appellate court expressly terminates a matter, trial courts have the ability and expertise to evaluate the context of the appellate opinion with the rest of the case and discern what appropriate next steps follow. In the unique context of restitution—which is required as part of sentencing—holding a second restitution hearing in this case was the appropriate next step.

¶46 The district court correctly concluded the doctrine of res judicata did not apply within the same case. And it correctly held that, in light of the fact that the court of appeals did not say otherwise, the mandate rule did not prohibit it from addressing its

---

[77] *Id.* ¶¶ 52–53 (cleaned up); *see also State v. Weeks*, 2002 UT 98, ¶ 26, 61 P.3d 1000.

previous error in the context of restitution. Once the first restitution order was reversed, the district court faced an unresolved motion for restitution. It correctly decided to hold a second restitution hearing to complete its sentencing, and it entered an order supported by sufficient evidence. We affirm the decision of the district court.

———————